### Louisville & Nashville Railroad Company v. Howser's Administrator.

(Decided October 30, 1923.)

### Appeal from Shelby Circuit Court.

### (Nos. 60 and 61.)

1. New Trial—Appearance of Remarried Wife at Trial in Death Action Not Ground for New Trial.—In an action by an administrator

for death at railroad crossing, it was not ground for a new trial that the former wife of the deceased atended the trial dressed in black as a bystander, and was referred to by counsel as a young and desolate widow, deprived of the maintenance and support of her husband, though she was in fact remarried.

2. Appeal and Error—Exclusion of Evidence Not Prejudicial.—In an action for death at a railroad crossing, defendant was not prejudiced by exclusion from consideration of the jury of evidence that pieces of glass and fragments of a bottle containing whiskey were found in the pocket of deceased after he was struck, where the court did not exclude other evidence that deceased had been drinking whiskey, and smelled of whiskey after the accident.

3. Railroads—Similar Transaction Held Admissible in Action for Death at Crossing.—In an action for death at a crossing, court did not err in permitting a witness to testify that on the day previous to the accident he used the crossing, traveling in an automobile; and narrowly escaped being struck by the same train which killed decedent, because he could not hear the train as he drove up the slope to the tracks, as bearing on the question whether the crossing was extra hazardous and whether defendant under the circumstances exercised the care commensurate with the danger attendant on the use of such crossing; such testimony not being offered for the purpose of showing another case.

4. Death—Evidence as to Dependents Irrelevant.—In action for death, court did not err in denying defendant opportunity to introduce evidence to show that deceased and his wife were not living together at the time of the accident; it being immaterial whether deceased had dependents.

5. Railroads—Evidence as to Work by Companion Irrevelant in Action for Death.—In an action for death of automobilist at a crossing, court did not err in excluding evidence that one who was killed in the same accident did not work at the garage on the preceding night, its relevancy not appearing.

6. Railroads—Care required at Hazardous Crossing.—The law requires a railroad company, with knowledge of the hazardous nature of a crossing, to exercise care commensurate with the danger to travelers on such crossing, even if such traveler knows of the extra hazardous condition of the crossing, and is under the duty to exercise greater care than at ordinary crossing.

7. Railroads—Traveler at Hazardous Crossing Entitled to Care Commensurate with Danger Though Little Traveled.—A traveler at an extra hazardous crossing is entitled to the benefit of the rule that a railroad company, having knowledge of the extra hazardous nature of a crossing, must exercise care commensurate with the danger to travelers, though the crossing is not a much traveled and used one.

8. Railroads—Intoxication Does Not Relieve Traveler of Necessity of Care.—Voluntary intoxication does not relieve a traveler of the necessity of exercising ordinary care to avoid injury at an extra hazardous crossing.

9. Railroads—Intoxication of Traveler Not Bar to Recovery for Death.—Intoxication alone of one killed at a crossing is not a bar to recovery, being merely a circumstance to be considered in determining the question of contributory negligence.

10. Railroads—Intoxication of Person Killed Admissible.—In action for death at crossing, it is competent for defendant to prove that deceased was intoxicated, or to introduce evidence from which the jury might reasonably deduce the conclusion that deceased was under the influence of liquor.        •

11. Appeal and Error—Error in Instruction Favorable to Appellant.— In an action for death at an extra hazardous crossing, error of the court in charging that, if the jury believed from the evidence that the crossing was a very "much traveled thoroughfare" and was unusually dangerous to travelers, the sounding of the whistles and ringing of the bells were not sufficient to give reasonable notice, it was the further duty of the defendant to use other means to prevent injury to travelers, when in fact there was no evidence that the crossing was much traveled, held favorable to appellant, and not prejudicial, where the administrator was entitled to recover because it was an extra hazardous crossing, regardless of amount of travel.

12. Appeal and Error—No Complaint of Favorable Error.—Appellant cannot claim prejudice from an error in his favor.

13. Railroads—Pleading Held to Warrant Proof of Extra Hazardous Nature of Crossing.—In an action by administrator for death at a crossing, it was not necessary to allege in the petition that the crossing was much used or was unusually dangerous, in order that plaintiff might introduce evidence to show that the crossing was extra hazardous; an averment of negligence in general terms being sufficient.

14. Death—$10,000.00 Held Not Excessive.—A verdict for $10,000.00 was not excessive for the death of a man 22 years old, who was strong and healthy, and had a position as a clerk in a hotel at $75.00 per month and board.

WOODWARD & WARFIELD, B. D. WARFIELD and WILLIS, TODD & WILLS for appellant.

PICKETT, BARRICKMAN & KALTENBACHER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

While driving an automobile along the public highway which crosses the tracks of appellant, L. & N. R. R. Company at grade at what is known as Keene's crossing, Shelby county, on August 26, 1921, the deceased, Harris Howser, and one Bruce were struck by an engine of one of the trains of appellant company and almost instantly

killed. Action No. 60 was commenced by the administrator of Howser in the Shelby circuit court on September 12, 1921, to recover $25,000.00 in damages for the destruction of the power of his decedent to earn money. A verdict for $10,000.00 having been returned in favor of Howser's administrator, upon which judgment was entered, the railroad company appeals, asking a reversal upon five alleged grounds stated by its counsel as follows:

"(1) The court erred in excluding evidence that decedent and his companion had drunk 'moonshine' whiskey the morning of the accident, and in directing the jury to disregard such evidence, which was competent and material on the issue as to whether decedent was contributorily negligent at the time of the accident.

"(2) The court erred in excluding other competent evidence offered by appellant, and in admitting incompetent evidence for appellee.

"(3) The petition does not aver and the evidence does not show that the crossing at which decedent was killed was in a thickly settled community, or was used by many persons such as to require appellant to take additional precautions thereat, and the court erred in authorizing the jury under the instructions to find against appellant because of its failure to take precautions additional to those of signaling the approach of the train by whistle and bell, there being neither *allegata* nor *probata* to justify such instructions.

"(4) The court erred in sustaining appellee's demurrer to appellant's petition in its suit for new trial and in dismissing the petition.

"(5) The court gave the jury erroneous instructions and erred in refusing some of those offered by appellant."

After a brief statement of the facts these grounds will be considered in the order set out. Action No. 61, which was instituted by the L. & N. R. R. Company against Howser's administrator for a new trial after judgment in case No. 60 was entered, is to be heard with this one on the merits. To obtain a new trial the railroad company avers: "Plaintiff says that said judgment was obtained and secured entirely or in part by the fraudulent representation of the defendant and others interested in said action. It says that one Mae Bacon appeared at said trial dressed in mourning and acting and posed and pretended

to be the widow of said Harris Howser and the witnesses who testified in the case testified as to her relation with said Harris Howser and that she was living with him at the time of his death and had written to him and corresponded with him and received letters from him but a very short time before his death, and counsel in argument of the case referred to her in eloquent and pathetic terms as a young and desolate widow deprived of maintenance and support of her husband, all of which was untrue; that she was not living with or being supported or maintained by the defendant at the time of his death and at the time of the trial she was not his widow,but that the said Harris Howser had died on the 26th day of August, 1912, but at the time of the trial, to-wit, on the 5th day of October, she was not the widow of the said Howser, but that on the 30th day of September, 1921, she had married one Eddie Bacon and was the wife of Eddie Bacon, all of which facts were fraudulently concealed from this plaintiff and the plaintiff had no knowledge or information concerning same until long after the trial was had and judgment entered and motion and grounds for new trial overruled and could not have known same by exercise of due diligence as the said marriage occurred in another state and not in Kentucky.''

A general demurrer was filed to the petition in the suit for new trial and sustained by the court. The plaintiff railroad company declining to further plead its petition for new trial was dismissed, and of this it complains as error.

The evidence shows that Keene's crossing at which Harris Howser came to his death is on and in a cut through which the highway is built and this cut intersects and crosses a cut of equal depth through which runs the tracks of the railroad company. The embankments of the railroad right of way are high and on them at the time of the accident was a growth of green weeds, grass and shrubbery located so as to obstruct the view of a traveler on the highway and prevent his seeing the approach of trains to the crossing until such traveler almost arrived at the tracks. In approaching the crossing decedent Howser and his companion came through a valley, crossing a creek and up a steep incline on to the tracks. It is in evidence that blasts from the whistle of a train at the regular post, fifty rods from the crossing, could not be heard by persons on the highway near the creek or as

they went up the incline to the crossing. It is also shown that in going up the steep incline all or practically all automobiles had to be thrown into second or low gear, which caused more noise than when the same cars were traveling on level ground. It was not a new crossing, but one of many years' use. Taken as a whole, the crossing where Houser was killed, according to the evidence, was extra hazardous, indeed, one of the most dangerous of which we have read in the review of records in many crossing accident cases which have come to this court. Appellant does not seriously attempt to contravert this fact; but it insists that if it be admitted the crossing was extra hazardous it was not shown to have been a much traveled highway, and therefore the law requiring a railroad company to exercise care commensurate with the increased danger at such crossings, was inapplicable and should not have been embraced in the instructions of the court to the jury.

Before going into consideration of the questions on the original appeal let us inquire whether the averments of the petition in the case for a new trial were sufficient to present a cause of action in favor of appellant company against the administrator of Howser. Copied above are all the material averments of that pleading. It is based upon the appearance at the trial of the late widow of deceased, dressed in mourning, and the reference of counsel for appellee in argument of the case to her as "a young and desolate widow, deprived of the maintenance and support of her husband," all of which declarations and assertions, it is charged, were false and untrue and were calculated to and did mislead and deceive the jury, appellant and its counsel into supposing that the woman who was at the time of the trial and is now Mae Bacon, was at the same time the widow of the deceased Howser, whereas she was not such widow at that time, having since the death of Howser remarried, becoming the wife of one Bacon. It is not averred nor claimed that the widow appeared as a witness or that she took any part in the trial except to appear as a mere bystander; neither does it appear from the record that the appellee or his counsel made any representations whatever to appellant or its counsel as to who the lady was or why she was there. As the former wife of the deceased it was not only her right, but nothing more than could reasonably have been expected for her to appear at the trial, assuming that she did not perpetrate

a fraud and was not guilty of deceit. As she only appeared at the trial as a spectator and did not participate in it as a witness or otherwise, we are unable to see how the appellant could have been prejudiced. The fact that she had remarried since the death of her husband did not militate against her right to attend the trial or to participate in it, if she desired to do so. As a matter of law her remarriage could not have relieved, in the slightest, the railroad company of its liability for the wrongful death of her husband, if any such liability it had incurred; nor could her remarriage have legitimately served to reduce the recovery. The action was on behalf of the estate of Howser—for the destruction of his power to earn money —to which she was not a party, either plaintiff or defendant. The petition, therefore, did not state a cause of action for a new trial, and the trial court properly sustained the demurrer to the petition.

Coming now to the merits of the controversy, it is insisted by appellant that the court wrongfully excluded evidence offered and introduced by it showing that deceased Howser and his companion were drinking if not absolutely drunk at the time of the disaster which brought about their death, and that this evidence was competent to show lack of prudence and care on the part of the deceased. One witness for appellant company testified that he was working in a field near the highway when deceased, Howser and Bruce, passed his place in an automobile only a short time before the accident and that they lost the hood from their machine, and getting out to replace it one of them said to the other: "Let's take another drink and light a cigarette and be going," whereupon a bottle was produced containing a substance of the appearance of moonshine liquor from which the two drank, then entered the car and drove away in the direction of the crossing at which they shortly thereafter met death. It is also shown that fragments of a bottle containing whiskey were found in the front pocket of the trousers of decedent after the automobile had been struck by the train; that his trousers around the pockets were wet with a substance which smelled loudly of liquor; that those who went to his rescue immediately after the accident and picked him up from the ditch by the side of the track smelled whiskey. After this and other evidence of a similar nature was heard by the jury, and appellant through its counsel was attempting to prove by a witness that cer-

tain articles, including pieces of a bottle, were taken from the pocket of deceased, the trial court sustained an objection and made the following ruling: "Gentlemen of the jury, you will not pay any attention to what the witness testified to as to what was taken out of the pocket of Howser because it is not competent for any purpose in this case; and that same injunction applies to the witness Buckhannon who testified and also to the witness Haswell; the objection is sustained." It will be observed that the court took from the jury only the testimony concerning what was taken from the pocket of the deceased and did not withdraw that evidence which related to the drinking of the whiskey by the deceased or the smell of the whiskey on his person about which the witnesses had spoken. All that evidence was considered by the jury. Just why the trial judge withdrew the evidence concerning the particles of the bottle taken from the pocket of Howser is not perceived, but as all of the evidence tending to establish the drunken condition of the deceased, if he were drunk, was allowed to go to the jury, we do not think the trial court erred to the prejudice of the substantial right of appellant in the ruling above quoted. A large part of appellant's brief was devoted to this question, but it does not distinguish between the exclusion of the evidence made by the court and the entire evidence upon that subject.

(2) It is next insisted that the court excluded other competent evidence offered by appellant and admitted incompetent evidence offered by appellee. The witness Zaring was permitted to testify that on the day previous to the accident he used the crossing where the accident occurred, traveling in an automobile, and narrowly escaped being struck by the same train which killed decedent, because, as he testified, he could not hear the train as he drove up the slope to the tracks. No objection was made to this testimony. It is said this evidence presents another case and was calculated to prejudice the rights of appellant.

This evidence would have been incompetent had it been offered for the purpose of showing another case, but it was entirely competent to show that one driving up the slope in an automobile to the grade crossing could not see nor hear the approach of a train as it came to the crossing. This was the very question involved, and inas-

much as a witness traveling by the same mode which decedent employed, going in the same direction and at about the same hour of the day, on the day previous to the accident, was unable to hear the approach of the train as it came to the crossing, the evidence was not only competent but entirely relevant and calculated to greatly aid the jury in determining whether the crossing was extra hazardous and whether or not the railroad company under the circumstances exercised care commensurate with the danger attendant upon the use of such crossing. Similar evidence given by other witnesses was admissible for the same reason.

Neither do we attach importance to appellant's complaint of the trial court's ruling in denying it opportunity to introduce evidence to show that the deceased Howser and his wife were not living together at the time of the accident. In an action for death it is not necessary for the plaintiff to show that his decedent had dependents, or who they were, or the degree of their dependency. In fact, such evidence is not admissible. Whether Mrs. Howser resided with appellee's decedent as his wife before the accident was wholly irrelevant and without legal effect upon the trial.

Appellant also offered to prove that Bruce, who was killed in the same accident, did not work at the garage on the preceding night. We cannot see the relevancy of this testimony, and we do not think the court erred in excluding it.

(3) It may be admitted that the petition does not aver and that the evidence does not show that the crossing at which decedent was killed was in a thickly settled community, or was used by many persons, but this we think did not affect the legal rights of the deceased Howser at this extra hazardous crossing. The court did not err, as we believe, in authorizing the jury by its instructions to find against the railroad company because of its failure to take additional precautions to those of signals required by statute on the approach of trains to the crossings, even in the absence of allegation and proof that the crossing was a much frequented one. The law requires a railroad company with knowledge of the hazardous nature of a public crossing to exercise care commensurate with the danger to travelers upon such crossings, even if such traveler knows of the extra hazardous condition of the crossing and is under the duty to exercise greater care

than at ordinary crossings. The duty is correlative. It rests upon both the railroad and the traveler. It is both reasonable and just.. Why should not a traveler who knows he is approaching a railroad crossing at which he cannot easily see or hear the approach of trains exercise greater precaution than when he approaches a crossing at which he can readily see and hear the approach of trains? And why should not the railroad company and its train operatives to whom are known all of the blind and dangerous crossings, exercise care commensurate with the increased dangers surrounding the crossing? Reason and justice dictate the rule. But it is not the law that a traveler at an extra hazardous crossing shall not have the benefit of this rule unless the crossing happens to be a much traveled and used one. The individual who passes over a public highway at such railroad crossing is entitled to the same protection as the multitude. The rule requiring care commensurate with the dangers of the crossing applies as well to a public crossing at which few persons pass as it does to a crossing over which hundreds pass daily, the only difference being the added care which the knowledge of the train operatives have of the increased use of the crossing and their duty to anticipate the presence of persons thereon.

It is the extra hazardous condition of the crossing which puts upon the trainmen the duty to exercise care commensurate with that danger and not the fact that many persons employ the crossing. The fact that many use the crossing puts on the added duty of anticipating such persons there and to have the train under such control as to be able to manage it if an emergency arises. At each place and in each instance members of the public have a right to make use of the public crossing and it is the duty of train operatives to anticipate the presence of persons at such place and to exercise care commensurate with the needs of the situation, and a failure to do so renders the railroad company liable. The burden is not all on the railroad company, for it is the duty of the traveler upon the highway to look out for his own safety by exercising such care as a reasonably prudent person under all the circumstances would exercise to avoid injury and if the crossing be extra hazardous, as is proven in this case, the burden is upon the traveler, if these facts are known to him to use more care and caution in approaching and using the crossing than would be required

at a crossing where the approach of the train might easily be seen and heard. Voluntary intoxication does not relieve one of the necessity of exercising ordinary care to avoid the injury nor even relax the rule. One intoxicated is under the same duty to exercise care as is a sober man. Nor is intoxication alone a bar to recovery. If by reason of such intoxication one fails to exercise the ordinary care of a sober man, or is unable to take proper precautions to avoid danger, he will be deprived of recovery. Intoxication is merely a circumstance to be considered in determining the question of contributory negligence. 29 Cyc. 334; Alexander v. Humber, 86 Ky. 565.

(4) It was competent for appellant to prove that deceased was intoxicated if it could do so, or to introduce evidence from which the jury might reasonably deduce the conclusion that deceased was under the influence of liquor and therefore not as alert for his own safety as a sober man under like circumstances would have been.

(5) Appellant's last insistence is that the instructions given by the court to the jury were erroneous and prejudicial to its rights. The instructions, we think, substantially presented the law of the case. In at least one particular the instructions were too favorable to appellant. The jury was told that it was the duty of the railroad company in operating its trains approaching the turnpike crossing described in the evidence to sound the whistle or ring the bell at a point not less than fifty rods north of the crossing and to sound the whistle or ring the bell continuously or alternatively from that point to the crossing, and if it believed from the evidence that the crossing was a very *much traveled thoroughfare*, and because of its location and surroundings unusually dangerous to travelers, and that the sounding of the whistle and ringing of the bell were not sufficient to give reasonable notice of the approach of the train to the crossing and the company knew this, or by the exercise of ordinary care could have known it, then it was the further duty of the defendant and the servants in charge of the train at the time to use such other means to prevent injury to travelers at said crossings as in the exercise of ordinary judgment reasonably prudent persons operating a like train under similar circumstances would have employed. The court should not have included the expression "much traveled thoroughfare," for whether it was over a much traveled thorough-

fare or one not so much traveled the administrator was entitled to recover, if the jury believed from the evidence the existence of the other facts upon which the instruction was predicated. This error being in favor of appellant did not prejudice its rights. In other respects the instruction is the same in substance as those approved by this court in L. & N. R. R. Co. v. Treanor's Admr., 179 Ky. 337; Veach's Admr. v. Louisville & Interurban Ry. Co., 190 Ky. 678.

We have not overlooked, however, the reference made in several opinions of this court to populous crossings, as though the frequency of the use of such crossings enters into and forms the basis, at least in part, of the rule stated above with respect to extra hazardous crossings. Most of these references were added for the purpose of showing the train operatives' opportunity for knowing of the dangers attending the crossings, while others were suggested for the purpose of manifesting the extremely dangerous character of the crossing involved. The crossing under consideration was not used overmuch, though it was a highway along which a great many people traveled daily. That it was a public highway was sufficient to entitle the administrator to show its extra hazardous nature by proving the surrounding conditions, the embankments, trees, shrubbery, fences, etc., which tended to cut off the view and prevented the traveler upon the highway from knowing of the instant approach of the train through the cut.

We have carefully examined and considered the opinions in the cases of L. & N. R. R. Co. v. Cummins, 111 Ky. 333; Southern Ry. Co. in Kentucky v. Winchester's Exr., 127 Ky. 144; C., N. O. & T. P. Ry. Co. v. Champ, 31 Ky. L. R. 1054; N. N. & M. V. Co. v. Stuart's Admr., 99 Ky. 496; Southern Ry. Co. of Ky. v. Thacker's Admr., 156 Ky. 483; Beach's Admr. v. L. & I. Ry. Co., 190 Ky. 678; I. C. Ry. Co. v. Tolar's Admr., 169 Ky. 114, and other cases relied upon by the appellant in its brief and petition for rehearing as supporting the proposition that it is only at extra hazardous railroad crossings over which numerous persons frequently pass that the railroad is required to exercise the added care required by the rule stated, but we are of opinion that there is nothing in any of the opinions referred to which is in conflict with the rule here asserted. Indeed, we think they are quite harmonious, although there are some loose expressions in

some of them tending to support appellant's contention. To the extent indicated they should be disregarded.

We do not think it was necessary for the administrator in his petition to allege that the crossing was much used or was unusually dangerous in order that he might introduce evidence as to the existence of such facts and be entitled to an instruction defining the company's duties at such crossing, an averment of negligence in general terms being sufficient.

Appellant insists that the verdict for $10,000.00 is excessive and that the judgment should be reversed for this reason. Decedent was twenty-two years old and had a position as clerk in a hotel at $75.00 per month and board. He was strong and healthy. During the war he served in the navy; he had enjoyed considerable business training and was a young man of promise. His expectancy was approximately forty years. Measured by the usual standards his estate suffered a much greater loss than $10,000.00. We see no merit in this contention.

No error to the prejudice of appellant appearing the judgment is affirmed in both cases, Nos. 60 and 61.

Judgments affirmed.