## Girtman's Adm'r v. Akins.

(Decided Oct. 11, 1938.)

GOLDEN & LAY, D. M. BINGHAM and R. L. POPE for appellant.

W. T. DAVIS and DAVIS, BOEHL, VISER & MARCUS for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Allie Girtman, a coal miner about 41 years of age, was struck and killed by an automobile owned and operated by Dr. E. W. Akins. The accident happened about 8 p. m. November 15, 1935, on U. S. Highway 25 E near Wallsend, a few miles north of Pineville. Z. Girtman qualified as the administrator of his brother's estate, and brought an action against Dr. Akins for damages for the death of his intestate, alleging that the injuries resulting in the death of Allie Girtman were caused by the defendant's negligent operation of the automobile. The acts of negligence specified in the petition were excessive speed, failure to keep a proper lookout, and failure to sound a horn or give any other warning. The defendant's answer was a traverse and a plea of contributory negligence. On the trial of the case the jury returned a verdict for the defendant, and the plaintiff has appealed. The appellant argues that the verdict is flagrantly against the evidence, and that the court erred in refusing to permit him to file an amended petition, in rejecting certain evidence, and in giving and refusing instructions.

Appellant introduced no eyewitness of the accident. Simon Williams testified that he was walking south along the Louisville & Nashville railroad tracks, which parallel the highway near Wallsend at a distance varying from 10 to 50 feet. At Wallsend he saw the deceased walking north toward Barbourville on the right side of the highway. He spoke to deceased, who apparently was sober. After Williams had walked 300 or 400 feet after meeting Girtman, he heard a "thud" and someone groaned. He looked back, and saw an automobile approaching at a rapid rate of speed which he estimated at 60 to 65 miles an hour. The automobile did not stop, but passed him going toward Pineville.

Lee Brown testified that he was employed at Wallsend as night watchman and engine coaler, and was at work on the night of the accident. He saw a man walking toward Barbourville on the right-hand side of the highway just at the edge of the pavement. Brown walked into the office in the railroad station, and after he had been there a few seconds, "heard a car hit something." He did not see the car, but estimated its speed from the noise it made at 55 to 60 miles an hour. He said that it did not stop after the crash, but continued down the road toward Pineville at a rapid rate of speed, passing the railroad station which was several hundred feet south of the scene of the accident. About ten minutes after the accident and after the deceased had been placed in a bus and taken to Pineville, Brown walked down to the scene of the accident. He testified that he saw marks on the road indicating that Girtman had been struck on the left-hand side of the road going toward Pineville, and there were marks indicating that an object had been dragged diagonally across the road a distance of about 170 feet to a point on the right-hand side of the road where Girtman's body was found.

Mrs. Ollie Brown, mother of Lee Brown, testified that she was sitting in her home on the night of the accident and heard someone scream. She ran to the door, and saw an automobile passing at a rapid rate of speed going toward Pineville. She fixed the rate of speed at more than 60 miles an hour. The Brown home is on U. S. highway 25 E more than 250 yards south of the place where Girtman was struck. N. R. Patterson, a witness for the plaintiff, testified, that he went to the scene of the accident shortly after it occurred, and saw a pool of blood on the pavement 3½ feet from the right-hand side of the road facing south toward Pineville. He saw marks on the pavement caused by a skidding automobile beginning at a point 30 feet north of the pool of blood, and found a shoe heel on the pavement where the skid marks began. It was shown that this heel was off one of deceased's shoes. Dr. Akins testified that he was traveling south on the highway at a rate of speed not in excess of 40 miles an hour. Just before he saw the deceased, he passed a car traveling in the opposite direction. He took his foot off the accelerator, dimmed his lights, and, just after he passed the approaching car, saw an object in the road directly in his line of travel.

At that time his car was traveling at a speed of not more than 32 miles an hour. He did not have sufficient space in which to turn his car to pass to the left or right of the object, but he applied the brakes and locked the wheels. Before the car hit the object, he saw that it was a man sitting in a crouched position on the road. He testified that he did everything he could with the means at hand to avoid the accident. C. B. Owen was riding in the car with Dr. Akins, and he corroborated the defendant in every respect. When the car came to a stop, Dr. Akins and Owen got out and found the deceased lying lengthwise under the car, his feet extending beyond the rear end of the car. Finding that the car could be moved without further injuring the deceased, Dr. Akins moved it forward and turned it so the headlights lighted the road where the deceased was lying in order to examine him and ascertain the nature and extent of his injuries. He concluded that Girtman was seriously, if not fatally injured, and he asked Owen to remain at the scene of the accident while he drove to Pineville for aid. Owen remained with the deceased, and Dr. Akins drove to Pineville and notified the sheriff and obtained an ambulance to take the injured man to the hospital.

It was conclusively shown that Dr. Akins stopped his car, and that Owen got out and remained with the deceased while Dr. Akins drove to Pineville. Appellant's own witnesses who arrived on the scene shortly after the accident happened testified that Owen was there. This destroys the inference appellant seeks to draw from the testimony of witnesses concerning the speed of the car after the accident. Dr. Akins, no doubt, did drive to Pineville after the accident at a rapid rate of speed. The overwhelming weight of the evidence tends to show that the deceased was drunk at the time of the accident. Several disinterested witnesses who saw him on the highway a few minutes before he was struck stated that he was reeling or staggering, and apparently was intoxicated. There was ample evidence from which the jury might conclude that the defendant was not guilty of negligence, or, if negligent, that the contributory negligence of the deceased was the proximate cause of his injury and death and not the negligence of the defendant.

During the trial plaintiff offered an amended petition "to conform to the proof," and the court refused

to permit it to be filed. The case was tried at the January, 1937, term of the Bell circuit court. During the trial the presiding judge was injured in an accident and the jury was discharged, and the case was continued to a later day in the term. The amended petition was offered when the case was called for trial the second time. It was alleged in the amended petition that:

"The defendant, E. W. Akins, negligently and carelessly operated his car in the nighttime, and at the time and place complained of in his petition, without same being equipped with two headlights of color other than red, or sufficient power to clearly reveal substantial objects at least 200 feet ahead.

"He says that at the time and place of the accident and injury complained of in his petition, that it was in the nighttime, and a dark, drizzly, foggy night, and that the defendant, with gross negligence and carelessness, operated his car at so great a rate of speed as that he could not, and did not, stop same within the range of his vision, which was shortened by the condition of the weather and the character and grade of the road."

Permission to file the amended petition was denied, but the plaintiff was permitted to introduce evidence on the issues raised by the pleading, and the court instructed the jury thereon.

In the instruction defining the duties of the defendant, the jury was told that it was his duty "to have said car under reasonable control, to operate it at a rate of speed that was reasonable and proper, having regard for the traffic and use of the highway at that time and place; to keep a lookout ahead of said car for other persons and vehicles in front of said car, or so near thereto, as to be in danger of collision, and during the night time to have his car equipped with two headlights of sufficient power to clearly reveal substantial objects at least 200 feet ahead, and if by reason of mist or other conditions of the weather, or grade of the road, he was unable to clearly see 200 feet ahead, to operate his car at a rate of speed which would enable him to stop same within the range of his vision, which might be obstructed by mist or other cause." It will be noted that the instruction followed the language of the amended petition. Under these circumstances, the error,

conceding for present purposes that the ruling of the court was erroneous, was harmless. A. Arnold & Son Transfer & Storage Company v. Weisiger, 224 Ky. 659, 6 S. W. (2d) 1084; National Council Junior Order A. M. U. v. Thomas, 163 Ky. 364, 173 S. W. 813; Louisville & Nashville Railroad Company v. Beeler, Ky., 123 S. W. 254; Logsdon's Adm'r v. Illinois Central Railroad Company, 65 S. W. 817, 23 Ky. Law Rep. 1644.

Some complaint is made of the refusal of the court to permit Lee Brown and possibly one or two other witnesses to testify concerning marks they saw on the road about noon on the day following the accident. Several witnesses who saw these marks shortly after the accident testified concerning them. U. S. highway 25 E is a heavily traveled road, and no proof was offered to show that the condition at the scene of the accident had remained the same. Under these circumstances, it was not error to reject the offered testimony. Appalachian Stave Company v. Pickard, 260 Ky. 720, 86 S. W. (2d) 685.

The appellant criticizes the instructions given by the court, and also complains because the court refused to give the instructions offered by him. The appellant offered three instructions. We have compared these offered instructions with the instructions given by the court, and find that the latter follow substantially the instructions offered by appellant. In fact, two of the instructions offered by appellant were given by the court with only a slight but unimportant change in phraseology. The instructions given by the court, of which appellant now complains, presented the issues fairly, but, aside from that, the appellant failed to take exceptions. The bill of exceptions shows that the appellant did not object or except to the instructions given by the court, and, in his motion and grounds for a new trial, he stated in his fifth assignment of error, "Plaintiff did not object to instructions given by the court." Not only did the appellant invite the instructions given by the court, but he failed to except to them. Under these circumstances, errors in the instructions, if any, are not available on appeal. Shawnee Sanitary Milk Company v. Fulkerson's Garage & Machine Shop, 258 Ky. 639, 79 S. W. (2d) 229; Page's Adm'r v. Scott, 245 Ky. 648, 54 S. W. (2d) 23; City of Greenville v. Johnston, 244 Ky. 782, 52 S. W. (2d) 716; Fremd v. Gividen,

8

233 Ky. 38, 24 S. W. (2d) 915; Asher v. Fordson Coal Company, 224 Ky. 48, 5 S. W. (2d) 481; Equitable Life Assur. Society of the United States v. Morgan, 254 Ky. 699, 72 S. W. (2d) 46. But, aside from this rule, we think the instructions presented the issues clearly and succinctly, and it is our conclusion that appellant received at the hands of the jury a fair and impartial trial, and that its verdict is sustained by the evidence.

The judgment is affirmed.