## Likins' Adm'r v. Solinger.

### Nov. 16, 1945.

Woodward, Dawson, Hobson & Fulton for appellant.

Davis, Boehl, Viser & Marcus and J. L. Richardson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

Mrs. Daisy Likins, a resident of Caneyville, Grayson County, was killed by an automobile of Phil M. Solinger in the early evening of April 25, 1944, while crossing at an intersection on Barrett Avenue, in Louisville. In the suit by the administrator of her estate against Solinger for damages, the verdict was for the defendant. The plaintiff seeks a reversal of the judgment upon the ground of error in the giving of a "sudden appearance" instruction.

The appellee construes the instruction as not being that form, but nevertheless justifies the propriety of giving it by distinguishing the decision in Dixon v. Stringer, 277 Ky. 347, 126 S. W. 2d 448, in which we reviewed the practice of giving the so-called sudden appearance instruction and held that it has no place except in certain classes of cases. We can see no difference in substance and effect between the instruction given

in this case and the usual form referred to in Dixon v. Stringer, supra.

It is submitted by the appellee that the difference in the facts likewise distinguishes the two cases. In the Dixon case, the defendant motorist had her eye on the street signal light, and it was claimed that she was not maintaining a proper lookout over the street, while in this case the defendant was maintaining a proper lookout, as he testified, as he was observing all the street before him. We need not stop to consider whether such a difference in the facts would justify a sudden appearance instruction had the pedestrian come from behind some object immediately in front of the automobile, which consideration would involve the interpretation and application of Dixon v. Stringer and subsequent cases of that line. The very fact that the decedent did not suddenly appear by suddenly darting out from behind some object which had concealed her presence takes the case entirely out of the conditions under which it was held a sudden appearance instruction was authorized in the era before Dixon v. Stringer. We think it clear that a sudden appearance instruction would not have been authorized even under the rule prevailing before that decision. The facts upon which this conclusion is based may be briefly stated.

Barrett Avenue is regarded as a north and south street. Where the accident occurred, a street or court called St. Anthony Place leads off from the east side, forming a "T" intersection. Not directly across but just south of it, on the west side, is the entrance to the Kentucky Baptist Hospital. There were an overhanging street light on Barrett Avenue opposite the end of the sidewalk on St. Anthony Place and lights on the gate posts of the Baptist Hospital. The avenue is 39 feet wide between the curbs. It is well lighted to about the center of the east street railway tracks, the street beyond that being shaded by trees and the wall of St. Anthony Hospital grounds.

Mrs. Likins had alighted from a southbound street car on the west curb, and after the line of traffic on that side had passed, went across at the intersection in a rapid walk or slow run without looking either way, according to the testimony of Mrs. Goldie Robins, who was standing on the opposite side of Barrett Avenue.

The defendant's automobile going north in the east street car line, or perhaps a little beyond just east of it, struck Mrs. Likins. She was knocked diagonally up against the east curb, a distance of 20 or 30 feet from where she was standing when struck. At least she was lying that distance from the spot when picked up unconscious. Mr. Solinger testified that he was driving about 25 miles an hour and keeping a proper lookout; that he suddenly saw the woman when she was about 20 feet in front of him, blew his horn, applied his brakes, and swerved to his left in an effort to avoid striking her. His impression was that the woman was in the act of passing from the east to the west side (opposite to the direction in which she was actually going) and had become confused and reversed herself. The open and extended side ventilating windshield and perhaps the side of his car struck the woman, as evidenced by the broken glass and some dents in the metal. As best determined, she was about the center of the northbound car tracks when hit. Thus she had gone about 25 feet from the sidewalk. The weather was clear and the street was perfectly dry. The tire marks showed that the car had skidded a distance of 46 feet from a point about 20 feet from where the defendant located the woman up to the curb on the west side, against which it stopped. Mrs. Likins suffered a fractured skull, several broken ribs, a broken arm and foot, two large lacerations on the head that exposed the whole skull all the way around the area. She was unconscious the whole time until she died three days later.

The defendant's car lights were on and in good shape, as were his brakes. He had not noticed any street car going in the opposite direction, and there was no traffic or car parked on the west side, from which the pedestrian had come.

Here there was a straight-away, unobstructed, well lighted street intersection, with a hospital on each side, all within the scope of the driver's vision. The pedestrian was crossing where she could cross upon the assumption of a recognition of her right, and where the presence of pedestrians might be expected and should be anticipated as a matter of law. As we have said, Mrs. Likins had gone about 25 feet, or more than half way across the street, when struck. If the appellant was going only 25 miles an hour, as he testified, then he must have traveled

more than 100 feet after the woman left the west sidewalk. She had not gone from behind any obstruction to the motorist's view. The appearance of a person is not sudden in the eyes of the law where the driver of an automobile has been aware of his presence, or should have been aware of it in the exercise of the care and observance of the duties which the law places upon him, for an appreciable length of time prior to action on his part to avert a collision. Under such circumstances there can be no "sudden appearance" as would have authorized the instruction about which we have been talking, and which was given in this case, even under the practice before Dixon v. Stringer. Ashland Sanitary Milk Company v. Messersmith's Administrator, 236 Ky. 91, 32 S. W. 2d 727; Big Sandy Bus Line Company v. Williams, 246 Ky. 758; 56 S. W. 2d 346; Wheeler's Administrator v. Sullivan's Administrator, 260 Ky. 814, 86 S. W. 2d 1023; Dr. Pepper Bottling Co. v. Hazelip, 284 Ky. 333, 144 S. W. 2d 798; Kentucky Virginia Stages v. Tackett's Adm'r. 294 Ky. 189, 171 S. W. 2d 4.

It seems to us that the instructions on the primary negligence of the defendant and contributory negligence of the decedent to which was coupled the last clear chance or discovered peril contingency, which were given, would have properly submitted the issues, and the additional "sudden appearance" instruction was a prejudicial error.

Wherefore the judgment is reversed.

Judge Dawson not sitting.