# Straughan's Adm'r v. Fendley.

December 18, 1945.

D. E. Wooldridge for appellant.

J. Ballard Clark and Thos. F. Manby for appellee.

210

Reversing.

Elihue Straughan met death by being struck by a car owned and driven by appellee on U. S. Highway No. 42, at near midnight, August 9, 1942. A trial resulted in a verdict for defendant; on appeal the questions presented relate to instructions, it being contended that in several instances those given were erroneous and prejudicial. Under these circumstances it will be necessary to give a brief review of the proof.

Appellee had spent the evening with friends at La-Grange, and was returning to his home at Goshen, in a westerly direction. He testified that his car with respect to brakes, tires and lights, was in good condition, and that at the time of the injury he was driving on his right side of the road at a speed not more than 35 miles per hour. The road over which Fendley was driving was practically level for quite a distance and without obstructions. Fendley had just rounded a slight curve into the straightaway when he observed an approaching car; he dimmed his lights, but could not say whether the oncoming car lights were dimmed. He had driven some distance when he struck Straughan. He says that he did not see any object in the road until just a moment before the impact, or when his car was about 4 feet from the object. Fendley says that he was keeping a lookout ahead and at no time saw an object on the road, until just a moment after the other car had passed; that the lights from the oncoming car momentarily interfered with his vision. He said that with his lights dimmed he could see for a distance of 200 feet. From his proof it would seem that his theory was that Straughan, in an effort to cross from one side of the road to the other, stepped into the path of his car.

According to proof by two of the passengers riding in the car driven by Jumper and meeting Fendley's car, the Jumper car had first passed Straughan and the Fendley car, as estimated by them from two or three car lengths, when they heard the impact. Fendley testified that he did not apply his brakes before the impact, but did so immediately thereafter and stopped in about 20 to 25 feet. One of the occupants of the Jumper car testified that as they approached the Fendley car they saw a man in the road at a distance of 75 to 80 feet. Two occupants

of that car, as best we can gather, saw him (at a lesser estimated distance) walking in the same direction as the Fendley car was going, at first near the black line center. As they came nearer it seemed to them that Straughan was undertaking to get on the other side of the road. These witnesses say he was walking in a zigzag manner, or from one side of the center to the other. One of the passengers in the Jumper car, testifying for appellant, said she saw Straughan at a distance of about 30 feet as they approached the Fendley car, walking near the black line on the left side of the road. This witness did not see him zigzagging, but makes it appear that he "wandered" from one side of the road to the other.

After both cars stopped, the occupants, including Fendley, went back to the place of impact, and found a hat and shoe, one or the other being near the black line, the other near the edge of the concrete; they also found glass in the road, which came from the broken headlight on the right side of Fendley's car. The physical evidence showed that Straughan had been struck by the headlight inside the fender, and his body thrown onto the hood, making a good-sized dent, then carried for a short distance, falling off into a ditch on the side of the road. Straughan's left leg was broken; his neck broken; the back of his head badly crushed, and he had bruises on his back and shoulders.

It was shown that Straughan, who had been at a roadhouse during the evening, left in an automobile with several other persons, and was let out at the intersection of the Westport road and Highway 42 at near midnight, and was on his way to his home when the accident occurred. There was some evidence that he had been drinking, though one of his companions who left him on Highway 42 said he could walk all right. Fendley admitted that before dinner at his friend's house, at about eight o'clock, he had one highball. There are other details which might be given and which may have been more or less material on the trial, but we deem our recital sufficient to determine the controversial questions.

The bill of exceptions shows that "on motion of plaintiff the court instructed in writing, with instructions 1 to 6 inclusive, and on motion of defendant instructed the jury in writing with instructions 7 to 10," inclusive. Plaintiff objected to the giving of the last four instruc-

tions. Plaintiff offered an instruction marked "2" and one marked "7" which was apparently offered in lieu of No. 7.

Instruction No. 2, offered by plaintiff and rejected, had reference to the speed, that is, requiring the defendant to operate his car at a reasonable speed, having regard for the traffic &c. This was omitted from instruction No. 1, defining the duties of Fendley in the operation of his car, tendered by plaintiff and given. Fendley had testified that he was not exceeding a speed of 35 miles, and this was the general opinion of those persons who were in the approaching car. He also testified that he had at no time applied or made effort to apply his brakes until after the impact. Under these circumstances there was no occasion for an instruction as to speed. The only conceivable object to be accomplished by a slowing of speed was to enable Fendley to stop in time to avoid striking Straughan; speed had nothing to do with the injury.

Before taking up other objections we take up Instruction No. 10, which in substance was what has become to be known as the "sudden appearance" doctrine. Counsel for appellee insist that the instruction was proper, and was taken from Fork Ridge Bus Line v. Matthews, 248 Ky. 419, 58 S. W. 2d 615. In writing Dixon v. Stringer, 277 Ky. 347, 126 S. W. 2d 448, in which in a measure we departed from the sudden appearance rule, we mentioned the Matthews case as being one which had caused some confusion in the minds of courts and the profession. We went into the question at considerable length, pointing out with particularity under what circumstances the sudden appearance instruction should or should not be given. Following the Dixon case there are several cases dealing with the subject. In Dr. Pepper Bottling Co. v. Hazelipp, 284 Ky. 333, 144 S. W. 2d 798, we made reference to the Dixon case, but did not hold error in failing to give the sudden appearance instruction, since the facts did not warrant. In Kentucky Virginia Stages, Inc., v. Tackett's Adm'r, 294 Ky. 189, 171 S. W. 2d 4, 9, where the facts might be said to be more nearly similar to those here, the contention was that the court erred in failing to give sudden appearance instruction, we said:

"No matter what the rule may have been previously,

the rule in this jurisdiction has been fixed by this court in Dixon v. Stringer, supra, where the history of the progress of the law on sudden appearance has been carefully reviewed and the following principles established: The defendant is not entitled to an instruction on sudden appearance, unless it be shown that the pedestrian slipped, fell, or was propelled into the path of the car involuntarily, or in actions by adults, when contributory negligence is not pleaded. And it is not proper in actions where the pedestrian was an infant chargeable with contributory negligence, * * * unless there was evidence that she slipped, fell, or was propelled into the path of the bus involuntarily. It is now the concept of this court, that in cases containing neither of the exceptions above, the theory of sudden appearance is sufficiently presented to the jury by a contributory negligence instruction.''

These cases merely hold that under the facts shown the plaintiff was not entitled to the benefit of the instruction. However, in the case of Likins' Adm'r, v. Solinger, 300 Ky. 824, 190 S. W. 2d 564 where the facts were of sufficient similarity to uphold the conclusion, we again reviewed cases prior to the Dixon case, that case and subsequent cases, and from the facts presented, concluded that: ''The appearance of a person is not sudden in the eyes of the law where the driver of an automobile has been aware of his presence, or should have been aware of it in the exercise of the care and observance of the duties which the law places upon him, for an appreciable length of time prior to the action on his part to avert a collision.'' We concluded: ''It seems to us that the instruction on the primary negligence of the defendant and contributory negligence of the decedent to which was coupled the last clear chance or discovered peril contingency, which was given, would have properly submitted the issues, and the additional 'sudden appearance' instruction was prejudicial error.'' Under the facts developed here we so conclude.

Instruction No. 7 told the jury it was the duty of Straughan, at the time and place of the accident, ''to use ordinary care to discover the approach of the defendant's car and to keep out of its way, and to walk on the left side of the road in the direction he was travelling, and if you believe from the evidence that decedent failed to

exercise such care &c.'' Counsel's objection to portions of the instruction may be based on his theory as expressed in brief that ''decedent had crossed the highway going to his right toward a lunch room located at the right side of the road just a little way ahead, and it is quite evident that he was walking on the shoulder of the road at the time he was overtaken by appellee's car, and struck by the car.'' It may be that if the proof showed this situation without contradictory evidence, the instruction would have been erroneous.

KRS section 189.570, enacted since some of the opinions cited below were rendered, makes it the duty of pedestrians walking on the highway to walk on the left side. Counsel objects mainly to the use of the word, in the place used, and ''to keep out of its way.'' We find that the same instruction in substance has been approved in several cases where the facts were of similarity. Trainor's Adm'r v. Keller, 257 Ky. 840, 79 S. W. 2d 232; Baldwin v. Maggard, 162 Ky. 424, 172 S. W. 674; Southeastern Tel. Co. v. Payne, 253 Ky. 245, 69 S. W. 2d 358; Page's Adm'r v. Scott, 245 Ky. 648, 54 S. W. 2d 23; Jackson's Adm'r v. Rose, 239 Ky. 754, 40 S. W. 2d 343. As we construe the language of the instruction, it means that the pedestrian should use ordinary care to observe the approach of cars and ordinary care to keep out of its way.

It may be noted that notwithstanding in Igo v. Smith, 282 Ky. 336, 138 S. W. 2d 497, and other cases cited, including the one relied upon by appellant, where we said, sometimes unnecessarily, that the pedestrian owed only the common law duty to use ordinary care, we recently took much of the force out of these expressions. In Knight v. Silver Fleet Motor Express, 289 Ky. 661, 159 S. W. 2d 1002, 1004, the objection was to the use of the words ''to keep a reasonable lookout'' in defining the duties of the injured pedestrian, and we said:

''Decisions of this Court holding that a pedestrian's only duty to exercise ordinary care for his own safety are cited, together with others criticising instructions imposing upon pedestrians varying types of 'lookout' duty under the particular facts disclosed. For example, we stated in the case of Igo v. Smith, 282 Ky. 336, 138 S. W. 2d 497, that an instruction requiring a pedestrian upon a highway to look in both directions * * * was erroneous.

But to say that a pedestrian walking upon a much travelled road should not be required * * * to keep a reasonable lookout would be equivalent to saying that he might walk along such a highway blindfolded, and still not be guilty of [contributory] negligence.''

In order that it may be understood that our indorsement of the instruction will not apply in all cases, we repeat what we said in closing discussion of this phase of the Knight case, in not giving tacit approval of the words objected to: ''* * * but here, at least, its inclusion was harmless, since, by the wording of the instruction the failure of decedent 'to keep a reasonable lookout' could deprive him of his right to recovery only if 'by reason thereof' he 'walked * * * into the side of the truck,' '' as was the defense in that case. Under the facts presented here we are of the opinion that the instruction was not prejudicial.

Instruction No. 8, in defining ordinary care as applicable to the instructions given, advised the jury that it meant that degree which ordinary prudent persons, ''if sober'' usually exercise under similar circumstances. It is contended that the proof was not sufficient to authorize the injection of the question of sobriety into the case. There was proof that Straughan had been drinking prior to the time he alighted from his friend's car near midnight, and that he was ''zigzagging'' or ''wandering'' across the highway. We think this sufficient to authorize the instruction. A reference to Black Star Coal Co. v. Slusher's Adm'r, 221 Ky. 729, 299 S. W. 732, will show that a similar instruction was approved and in Black Star Coal Co. v. Garland, 228 Ky. 473, 15 S. W. 2d 265, in reversing we directed that in lieu of the usual ordinary care instruction the court should give the one approved in the Slusher case, supra. The record in Girtman's Adm'r v. Akins, 275 Ky. 2, 125 S. W. 2d 660, contains a similar instruction which we approved in the opinion. We conclude that this instruction was not prejudicial.

Complaint is made of instruction No. 9, which told the jury that decedent could not by reason of intoxication, ''if any proven,'' be excused from that degree of care which men of ordinary prudence usually exercise under similar circumstances, etc. The general rule is that voluntary intoxication will not excuse want of due care. Berry on Automobiles, Vol. 2, p. 413; Louisville

& N. R. Co. v. Howser's Adm'r, 201 Ky. 548, 257 S. W. 1010, 36 A. L. R. 327; Girtman's Adm'r v. Akins, supra. We approved substantially the same instruction in Cincinnati, N. O. & T. P. R. Co. v. Reed, 154 Ky. 380, 157 S. W. 721. It may be better to frame the instruction as was indicated, in substance, in the Reed case or substantially as follows:

If the jury believe from the evidence that at the time and place of the injury decedent was under the influence of intoxicating liquor to such an extent as to make him incapable of exercising, and you believe from the evidence he did not exercise, that degree of care for his own safety ordinarily exercised by a sober and ordinarily prudent person under circumstances similar to those proven in this case, and that such state of intoxication, if you believe from the evidence it existed, contributed to bring about his injury, and that but for same, such injury would not have occurred, the law is for the defendant and you will so find

Our conclusion that instruction No. 10 as to sudden appearance was erroneous and prejudicial requires a reversal of the judgment, with directions for a new trial consistent with this opinion.