**SADDLER v. PARHAM et al.**

Court of Appeals of Kentucky.
June 20, 1952.

946

Jarvis & Ross, Greenville, for appellant.

Hubert Meredith, Owensboro, William P. Donan, Greenville, Robert Gwin, Greenville, guardian ad litem, for appellees.

CULLEN, Commissioner.

In an action for personal injuries, brought by Judson Saddler, a pedestrian, against Harold Parham, a motorist, the court directed a verdict for the defendant, at the close of the plaintiff's evidence, on the theory that the plaintiff was guilty of contributory negligence as a matter of law. On appeal, Saddler contends that the case should have been submitted to the jury, both on the question of contributory negligence and on the question of last clear chance.

Saddler, age 22, lived with his parents and two brothers in a house on the east side of Highway 181, approximately 200 feet south of the city limits of Greenville. From the Saddler home to the city limits Highway 181 slopes downward, and then rises from the city limits to the first intersecting street in Greenville, a distance of some 500 feet. The highway has a black top surface.

On the evening of November 22, 1949, after dark, Saddler and his two brothers, ages 17 and 15, left their home to go to a movie in Greenville. They stepped upon the surface of the highway and proceeded to walk down the right hand lane of the highway, three abreast, towards Greenville. They admitted that they were talking and laughing, and "having a good time," as they walked, and were paying no attention to traffic behind them. They further admitted that they knew they were required by law to walk on the left side of the highway, and that there were signs near the city limits directing pedestrians to walk on the left side. Although a colored boy, standing on the other side of the highway, testified that the lights of Parham's car shone on the Saddler boys from a distance of 500 feet away, they said they did not become aware of the approach of the Parham car before it struck them.

The Parham car, traveling towards Greenville, struck the Saddler boys at a point about 100 feet inside the city limits. At the time of the impact, Judson Saddler was on the highway about four feet from the right edge of the pavement, and his two brothers were on the pavement immediately to the right. Judson was hit by the front center of the Parham car, and his two brothers were struck by the right side of the car. Judson was carried or thrown a distance of some 91 feet and was severely injured. Skid marks of the automobile commenced 20 feet south of the point of impact and extended for a distance of 114 feet.

Parham testified that he was driving 35 or 40 miles per hour; that as he neared the city limits a vehicle passed him, going in the opposite direction, and he was temporarily blinded by its lights; that he did not see the Saddler boys until he was within 15 or 20 feet of them; and that he immediately applied his brakes and attempted to swerve to the left to avoid them. One of the Saddler boys agreed that a car had passed them, going south, immediately before the accident, but the other two Saddler boys, and the colored boy across the road, denied that there was any such car.

The colored boy estimated that the Parham car was going "about 60 miles an hour, rough estimation." This was based upon his observation of the car as it came towards him, from the time he first observed the lights a distance of 500 feet away until the car struck the Saddler boys.

It is admitted that Parham at no time sounded his horn.

The only conflict in testimony is with respect to the speed of the Parham car and the presence or absence of a car going in the opposite direction immediately before the accident.

■ There is some contention by the appellant that KRS 189.570(6), which requires pedestrians to walk on the left side of the "highway," does not apply to streets within the limits of a city. This contention cannot be upheld, because KRS 189.010 defines "highway" to include a street.

Before undertaking to answer the specific questions raised on this appeal, it may serve a useful purpose to review briefly some of the basic rules that are designed to control the determination of liability for damages in negligence cases.

■ Of course, in every case there must exist, as a basis for liability, primary negligence on the part of the defendant, constituting a proximate cause of the injury for which recovery is sought.

■ Notwithstanding that this basis for liability of the defendant is established, the plaintiff will be barred of recovery if he also was negligent and his negligence was a contributing factor in causing the injury. It is not necessary that the plaintiff's negligence be the sole cause of the injury; it is sufficient if it contributes to the extent that the injury would not have occurred but for such negligence. McCarter v. Louisville & N. R. Co., 314 Ky. 697, 236 S.W.2d 933.

■ However, under the "humanitarian" doctrine of last clear chance, the contributory negligence of the plaintiff may be neutralized, and he be permitted to recover, where the defendant, after the plaintiff's peril becomes obvious, fails to avail himself of a last clear chance to avoid the accident.

It is recognized that the rule of contributory negligence, strictly applied, is a harsh rule, because it bars the injured plaintiff of recovery, where his negligence is a contributing factor, regardless of the quantity of fault attributable to each party. Accordingly, there was a tendency on the part of this Court, for a time, to broaden the application of the last clear chance doctrine so as to impose liability upon the defendant where he seemed to be the worse or greater wrongdoer. However, in recent cases, the Court has placed limitations upon the application of the last clear chance doctrine, recognizing that some such limitations are necessary if the defense of contributory negligence is to have any meaning. See Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758; Kentucky & West Virginia Power Co. v. Lawson, Ky., 240 S.W.2d 843; Rogers v. Abbott, Ky., 240 S.W.2d 840.

Although the Court, by placing limitations upon the application of the last clear chance doctrine, has evidenced a purpose to give greater recognition to the defense of contributory negligence, yet a reluctance on the part of the Court to preclude injured plaintiffs from recovery has been reflected in a tendency to let the question of proximate cause go to the jury in cases where, under a strict application of the rules, the plaintiff's negligence clearly was a proximate cause as a matter of law. See Burnett v. Yurt, Ky., 247 S.W.2d 227; Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758.

■ Of course, in any case where the facts are in dispute, it is for the jury to determine the facts. And if, where the standard of care is not prescribed by a statute, there is a question as to whether the plaintiff was negligent, from the standpoint of whether what he did amounted to a failure to exercise ordinary care, that question is one for the jury. Also, on the question of proximate cause, if reasonable minds could differ as to whether the accident was a natural and probable result of the plaintiff's negligence, the jury should decide the question.

The real problem arises where the facts are not substantially in dispute, the plaintiff's negligence is established because he has violated a statutory standard of conduct, and the accident clearly is a natural and probable result of the plaintiff's negligence because the accident that occurred is exactly the kind of accident that the statute violated by the plaintiff was intended to prevent. In such a case, submission to the jury of the question of contributory negligence amounts to an authorization to the jury to fix responsibility on the basis of which party was more at fault, according to the jury's own standards.

The "but for" test of proximate cause, which always has been used in Kentucky in submitting contributory negligence to the jury, contemplates that the jury will decide only the question of causation in fact. Therefore, where causation in fact exists beyond question, the court is merely evading its responsibility by submitting the question of proximate cause to the jury, under a "but for" instruction. The jury, in reality, is thereby being permitted to find a verdict for the plaintiff in the face of an instruction which in terms bars recovery by the plaintiff.

While it might be desirable that a tightening of the doctrine of last clear chance be accompanied by a relaxation of the rules governing contributory negligence, it is difficult to see how the latter can be accomplished, short of the adoption of a comparative negligence statute. Certainly, there can be no justification for relaxation through the device of leaving the question of proximate cause to the jury in cases where the defendant seems to be the greater wrongdoer.

We fear that in some cases, where contributory negligence has been in issue, this Court has directed or approved submission of the question of proximate cause to the jury under an implication that there can be only one, single, decisive, responsible cause; ignoring the fact that the defendant's negligence and the plaintiff's negligence may both be contributing causes. It might be

argued that to permit the jury to determine what is the one decisive or responsible cause furnishes a practical solution to the problem of how to relax the strict rules governing contributory negligence. The trouble is, that what actually happens is that the jury *compares negligence,* because it is impossible for the jury to compare causation. The jury decides that what one party did is a greater offense than what the other party did, from the standpoint of standards of care or conduct—not that what one party did was more of a *cause* than what the other party did.

Approaching now the issues in the particular case before us, it may be conceded at the outset that the defendant motorist was negligent and that his negligence was a proximate cause of the plaintiff's injuries. The questions of whether the defendant should have sounded his horn, and whether he had knowledge of the custom of pedestrians to walk on the right side of the road in the locality where the accident occurred, which questions are argued vigorously by counsel for the appellant, have to do only with the quantity of the defendant's negligence.

That the plaintiff pedestrian was negligent as a matter of law is not disputed, because it is established beyond question that he was walking on the right side of the highway, in direct violation of KRS 189.-570(6). However, his negligence consisted not so much in violation of the letter of the statute, but in failing to comply with the standard of care for his own safety that the statute by necessary implication establishes. Obviously, the statute has a definite purpose in requiring the pedestrian to walk facing traffic, and this purpose is not to make it easier for the motorist to avoid the pedestrian. Whether the pedestrian is facing the traffic or has his back to traffic can in no way affect the ability of the motorist to see the pedestrian or to avoid striking him. The clear intent of the statute is that the pedestrian shall walk facing traffic in order that he may observe approaching vehicles and step out of their path if it appears they may not turn out of their path to avoid him. Straughan's Adm'r v. Fendley, 301 Ky. 209,

191 S.W.2d 391; Applegate v. Johnson, 306 Ky. 358, 208 S.W.2d 77.

■ We have, then, a statute designed solely for the purpose of requiring the pedestrian to exercise care for his own protection. The pedestrian in the case before us failed to conform to the standards set up by the statute, with the very result the statute was intended to prevent. How can it be said, then, that the pedestrian's negligence was not as a matter of law a proximate cause of the accident? No reasonable man could say that this accident would have happened anyway, even if the plaintiff had complied with the statutory mandate to keep a proper lookout and to get out of the way if the lookout disclosed the necessity to do so.

Of course, if there was evidence that the defendant was traveling at such a high rate of speed that a pedestrian keeping a proper lookout might not have been able to get out of the way, there might be a jury question as to proximate cause. But there is no such evidence here.

If the plaintiff had been walking towards the defendant's car, and had failed to step out of the way because he thought the defendants would turn and avoid him, there might be a jury question as to the plaintiff's *negligence* (not as to proximate cause). But where, as in the case before us, the pedestrian walks with his back to traffic, in violation of the statute, and thus deprives himself of any opportunity to observe oncoming traffic, he is *negligent* as a matter of law.

We are of the opinion that the plaintiff was contributorily negligent as a matter of law, regardless of whether strict or relaxed rules of contributory negligence are applied.

We are aware that in the Swift case, Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758, where the facts were quite similar, it was held that the question of proximate cause should be submitted to the jury. Perhaps the Swift case can be distinguished on a slight difference in facts, but we are inclined to the opinion that the Swift case was wrong on this point.

■■ There remains for consideration the question of last clear chance.

Under the concept of the last clear chance doctrine expressed in the Swift case and the Lawson case, Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758; Kentucky & West Virginia Power Co. v. Lawson, Ky., 240 S.W.2d 843, we must hold as a matter of law that the defendant in the case before us did not have a last clear chance. There is no evidence showing that the defendant actually discovered the plaintiff's peril in time to avoid him. The only basis upon which the doctrine could be applied here is that the defendant *should have* discovered the plaintiff's peril in time to avoid him. However, it is held by the great weight of authority that it is only where the plaintiff is *physically unable* to escape from his peril that the defendant is held responsible on the ground that he *should have* discovered the peril. 38 Am. Jur., "Negligence," § 224, p. 909; Prosser on Torts, ch. 9, § 54, p. 408. It also is generally held that the last clear chance doctrine is not applicable where both parties are merely inattentive. Prosser on Torts, Ch. 9, § 54, p. 408.

Perhaps some of our last clear chance decisions can be explained on the theory that, although we used language indicating that the defendant *should have* discovered the peril, the real basis for the decision was a belief that the defendant *must have* discovered the peril—that he did discover it notwithstanding his testimony to the contrary. See Galloway v. Patterson, 312 Ky. 862, 229 S.W.2d 960. However, in the case before us, the evidence does not warrant the conclusion that the defendant *must have* discovered the plaintiff's peril in time to avoid him. The only evidence that could be relied upon to disprove the defendant's testimony as to when he actually discovered the plaintiff's peril is the evidence of the skid marks of the defendant's car commencing 20 feet from the point of impact. Making some allowance for reaction time, the skid marks would indicate he actually discovered the plaintiff at a distance of some 50 or 60 feet away. Even if the defendant was traveling only 40 or 45 miles an hour, instead of 60 miles an hour as contended by the plaintiff, he would, in the distance of 50 or 60 feet, have had approximately one second in

which to acquire a realization of the situation and take action to avoid the accident. This hardly can be considered sufficient time to give the defendant a clear chance.

The judgment is affirmed.