## Chesapeake & Ohio Railway Company, et al. v. Crider, et al.

(Decided May 4, 1923.)

Appeal from Boyd Circuit Court.

1.   Evidence—Rights Cannot be Determined by Speculation.—The rights of litigants in courts are not to be determined by guesswork, surmise, or speculation, but there must be either direct evidence

authorizing a finding of fact, or circumstantial evidence based upon facts which will authorize a finding by a court or juror without indulgence in mere speculation.

2.   Railroads—Evidence as to Cause of Fire Held Insufficient.—Evidence that smoldering fire was left on the railroad right of way the night before plaintiff's unoccupied house, situated 36 feet away, was found to be on fire and so nearly consumed that it was impossible to determine the origin of the fire, held not to warrant an inference that the fire was caused by the spreading of that fire.

PRICHARD & MALIN and WORTHINGTON, BROWNING & REED for appellants.

JOHN F. COLDIRON and MARTIN & SMITH for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

On the early morning of either the 5th or 6th of November, 1920, a dwelling house on appellee Crider's farm in Boyd county, near the railroad track of appellant, was destroyed by fire, and this is an action by him against the railroad company wherein he charges the fire was caused by the negligence of the company, and prays judgment for the value of the house.

The Aetna Insurance Company of Hartford, Connecticut, before answer filed its intervening petition asking to be made a party plaintiff. In that petition it is alleged that the intervenor was engaged in the fire insurance business in this state, and at the time of and prior to the fire in question had issued and delivered to Crider a policy of insurance on the dwelling house destroyed, and that upon proof of damage and loss made, and according to the terms of its policy so issued to Crider and in discharge of its liability therein, it paid to Crider on account of such loss two thousand dollars, and asked that it be subrogated to the rights of the plaintiff to the extent of such payment in any recovery by him.

The answer was merely a traverse of the allegations of negligence by defendant or any of its officers, agents or employes.

On the trial a verdict was returned for the plaintiffs for about twenty-seven hundred and fifty dollars, and the railroad company has appealed.

In the brief for appellant all questions are expressly waived except the single one whether it was entitled to the peremptory instruction for which it asked both at the

conclusion of the plaintiff's evidence and at the conclusion of all the evidence.

The Big Sandy Division of the C. & O. Railway Company runs from Catlettsburg south up the Big Sandy river. Appellee's farm is about a mile or more from Catlettsburg, and the house in question was on the east of the railroad tracks and between them and the Big Sandy river. The yard surrounding this house ran up to and adjoined the railroad right of way, and the nearest corner of the house to the railroad tracks was a distance of thirty-six feet. The wooden paling fence between the house and the right of way was only a few feet from the right of way. The house had been occupied by a tenant of Crider until either the afternoon before the fire or the second afternoon before, when he had removed everything from the house and gone to another place in the neighborhood, so that when the house burned it was unoccupied.

For some two or three days before the fire appellant's section crew had been engaged in that locality in removing from under the rails rotten and unfit ties and replacing them with others. The ties so removed were piled up along the right of way and thereafter burned. One of these piles was almost directly opposite appellee's house but on the further side of the railroad track, and there were two more piles not far away, but not so near to the house, there being from six to ten ties in each pile.

It does not appear there is any obstruction of any kind between the railroad track and appellee's house on the east side thereof, but it does appear that on the west side of the track there is a cliff or a hill, and some of the witnesses refer to a cut at that point. Between the railroad track and this cliff on the west side is only a few feet, and in that space is a ditch designed to carry off the water. The pile of ties nearest appellee's house was just west of that ditch, and between it and the cliff. These piles of ties were set on fire either the day before appellee's house burned or the second day before, there being some contrariety in the evidence about this; but there was evidence that the afternoon and evening before the house burned, and as late as eight or eight-thirty o'clock the evening before there was a smoldering fire, or embers, or coals still perceptible at the place where the ties had burned. There is also evidence that between the house and the railroad track there was a tree which had shed its leaves, and they were scattered in that area

and some of them were banked up against the paling fence.

It is the theory of appellee that the fire from these burning ties was communicated to his house and resulted in its destruction; while the contention of appellant is that there is no evidence from which it may be said that the burning pile of ties had any connection with the destruction of the house by fire.

No witness states that prior to the destruction of the house any fire was seen on the east side of the track, or that there had been any spreading whatsoever of the fire from the piles of ties on the west side. The house was first discovered to be on fire a short time before daylight, and by the time the first person got there it was almost wholly destroyed. Of course at that time the paling fence was burned, the trees and leaves between the railroad track and the house were burned, and there were in fact the ends of ties on fire on the east side under the rails. All of these things, manifestly, could have caught from the burning house.

There is evidence that during the night several railroad trains passed on that track, and the theory is advanced that the suction or draft caused by the rapidly passing train fanned the dying embers in the tie pile into life and probably scattered them, bringing about the destruction of the house; but the weakness of that theory is that the burning tie pile was on the west side of the track, and it is hardly probable that any scattering of the embers would have thrown them on the east side of the track when the moving train was between it and the east side. There is also evidence by one or two witnesses that there was a considerable breeze or wind that night at some time, but no one of them undertakes to say in what direction that wind was blowing. The house was practically destroyed by fire when it was first discovered before daylight, and it must have caught some time earlier in the dead hours of the night. No witness saw, before the house was destroyed, any fire on the east side of the railroad. In the final analysis we have only the fact that about eight or nine o'clock the night before there were some dying embers still showing in a fire from a pile of ties burned on the west side of the track some thirty-six feet away from the nearest point to the house, and we have also the statement of a witness that he passed along the track at eleven-thirty o'clock that night and he saw no sign of fire whatsoever, even on the west

side of the track where the ties had burned, although it was a very dark night. We have also the testimony of the tenant who had vacated the house either the afternoon before or the second afternoon before, that he left the front door of that house unfastened, there being no lock on it. We have the additional fact that another unoccupied house in that locality was destroyed by fire that same night, and that house was some half mile or more from the railroad right of way.

The evidence as to the origin or cause of the fire that destroyed the house is wholly circumstantial. There is no fact or controlling circumstances in the evidence showing any causal connection between the burning of the house and the burning of the ties on the right of way.

Can it be said this evidence justifies anything more than a surmise or suggestion that the house burned from a spark carried on to plaintiff's property and which was communicated to the house? Can any tangible thing be seized hold of which would authorize a conscientious man seeking for the truth to say more than that it *might* have been so caused?

The rights of litigants in courts of justice are not determined by guesswork, surmise or speculation. There must either be direct evidence authorizing a finding of fact, or a network of circumstantial evidence based upon facts which will authorize a finding by a court or a juror without indulgence in mere speculation or surmise.

As said in Johnson, Administratrix v. M. & O. Railroad Co., 178 Ky. 113:

"When the injury is proven, negligence may be inferred from the facts and circumstances which surround it, if it can be reasonably inferred from them that the negligence caused the injury."

It is likewise said in Hearell v. I. C. Railroad Co., 185 Ky. 43:

"There must be some evidence to show that deceased lost his life through the negligence of defendant, and this evidence must be sufficient to charge the defendant with a breach of duty, and recovery cannot be had on mere surmises or speculation as to how the injury complained of happened."

Assuming for the purpose of this case that it was negligence for defendant's servants to set fire to and leave burning the pile of ties in such close proximity to the house, yet we fail to find any tangible evidence which

would authorize a jury to find such negligence was the cause of the destruction of plaintiff's house.

It is a well known fact that more unoccupied houses are destroyed by fire than those occupied; and it is likewise a well recognized fact, as said by this court in the case of Wood v. Cumberland Telephone & Telegraph Company, 151 Ky. 81:

"So many fires are of mysterious origin, that it may safely be said half of them cannot be accounted for."

In the light of the rule so often laid down by this court we are constrained to hold there was no such evidence as authorized the submission of the case to the jury.

The judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.