## Big Sandy Bus Line Co. v. Williams.

(Decided Jan. 13, 1933.)

760

R. W. KEENON for appellant.

JOHN T. DIEDERICH for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from the judgment of the Boyd circuit court for $5,900 rendered in an action instituted therein by Isabelle Heston, as next friend for her infant daughter, Garnet Kathleen Williams, for personal injuries received in an automobile accident alleged to have been caused by the negligence of the appellant bus company.

The accident occurred at the intersection of Winchester and Central avenues in the city of Ashland.

On the occasion of the accident, which occurred about 5 o'clock p. m. December 27, 1928, the appellee, Garnett Kathleen Williams, the then six year old daughter of Isabelle Heston, was sitting in her mother's lap, beside her step-father, Ed Heston, who was then operating their open Chevrolet touring car, in which they were driving from Catlettsburg to Ashland. They were then traveling west over Winchester avenue of said city, towards the house of John Burgess on Central avenue. This Central avenue, coming from a southwest direction, intersects Winchester avenue at a very acute angle and at a point just a little east of the underground crossing thereon, over which passes the

Chesapeake & Ohio Railroad. At this point, near the beginning of this underground crossing, Winchester avenue turns or curves sharply to the right, or north, while just east of this underground crossing, turning in the avenue, it is intersected on its south side by Central avenue, at so sharp and acute an angle, as stated, as to practically present a straight-away continuance of Winchester avenue, or so as to require one desiring to enter therefrom, upon this Central avenue intersection, to only cross over Winchester avenue, onto the latter.

According to the evidence of appellee as to the circumstances and facts attending this collision, it appears that the plaintiff (appellee), with her mother and stepfather, had upon this occasion driven their Chevrolet car westward upon Winchester avenue in the city of Ashland, to a point thereon next the intersection of Central avenue therewith, and but a few feet east of said underground crossing on Winchester avenue, where, beginning with the eastern end of this underground crossing, the avenue takes so sharp a turn or curve to the right that one driving eastward through it can see but a short distance ahead eastward, on Winchester avenue, until reaching the point of emergence therefrom.

The evidence for appellee shows that the plaintiff, Garnett Williams, and her parents were, upon this occasion, driving their car westward on Winchester avenue, and had reached the point thereon where they were to cross slightly to the left, or south, over the avenue to enter Central avenue in going to the Burgess home, located thereon; that, at this stated point on Winchester avenue, they stopped their car on the right, or north side thereof, for the purpose of looking and listening for the approach of other cars or vehicles along the avenue, but, seeing none approaching from either direction, nor hearing any warning signal of any car approaching through the underground tunnel, they, putting the car in low gear, proceeded to cross Winchester avenue, at a slow rate of speed of some 10 or 12 miles, over to the Central avenue intersection; that in this attempted crossing of Winchester avenue they had reached the street car tracks, extending along its south side, when the driver of their car, Mr. Heston, observed the rapid approach of the defendant's bus as it emerged

from the underground crossing; that it was being driven eastwardly towards them on the south side of the avenue at an estimated rate of speed of 30 or 40 miles per hour; and that, just as plaintiff's car crossed over the tracks, it was struck and badly damaged by the defendant's bus running into it.

Mr. Heston's testimony as to this is that the driver of the bus, when close upon him, and while continuing his high speed of travel, attempted to turn his bus to the left, with the result that its right rear end skidded into plaintiff's car, which he was passing to his left, driving it back some 10 feet into a set-off of the avenue at this intersection, and that the bus hung in his car and struck it with such force as to break his car's windshield, mash in the right front corner of the top, bend and break its fender, door, and running board, and otherwise damaged it, the collision further resulting in the injury of this plaintiff, Garnet Williams.

Plaintiff's mother's testimony, as to the circumstances and facts of the collision, is that they had stopped their car on Winchester avenue, before undertaking to cross it for entering Central avenue, and that she, at the time, looked back to see if any cars were approaching, while Mr. Heston, who was driving the car, was looking forward; that they then started to go across the street, as to which she further states:

"Well, we got right along there—right along in— right along—was, I think, some of the car—right along—something like that. Well, when that bus was coming up there, he was coming up so fast that he ran into us across—right along here—forced us up in here."

"Q. Up to this offset here? A. I can't tell you just whether it was clear up here or not, because I jumped out and run.

"Q. Did you jump out with the child? A. Yes sir.

"Q. What is your judgment as to the speed of this bus that was coming up there? A. Well, goodness, he was coming twenty-five or thirty miles an hour.

"Q. Did he seem to change the direction of his course? A. I couldn't say. You see she was settin' on my lap, and I couldn't see that.

"Q. Did he sound any signal or alarm? A. No sir."

Plaintiff's evidence is further to the effect that the negligent and wrongful collision of defendant's bus with the open touring car in which she was riding with her parents upon this occasion directly caused and resulted in her serious and permanent injury, the three physicians who treated and examined her testifying that the third, fourth, and fifth vertebræ of her neck had been compressed and fractured, as was also shown to be the case by the X-ray photographs made thereof, and that her injury was such that it would be permanent.

The evidence for the defendant, or appellant, was, on the other hand, that the defendant operated a bus line from Catlettsburg, Boyd county, to Louisa, Lawrence county, and upon the occasion in question one of its buses, somewhat after 5 o'clock on the evening of December 27, 1928, was making the trip from Catlettsburg eastward, and had just emerged from the eastern end of this underground crossing, when, turning to the left, it collided with the car in which plaintiff and her parents were driving across Winchester avenue. The driver of the bus, Harvey Jones, testifies that he saw plaintiff's car as it crossed Winchester avenue, and when about 50 feet in front of him; that he was then driving on the left side, or his right, of Winchester avenue, and that the car did not stop until the plaintiff's car struck his bus at a point some 15 feet east of the underground crossing, maybe not quite so far; that he drove his bus to his left-hand side of the street as far up on the little bank as he could get it, to be out of the way; that, after the collision, he was told that the street car conductor moved plaintiff's car off the street car tracks; that, returning to the place of the collision afterwards, he found broken glass, chiefly on the street car track, but some on the Winchester side of the track. His account of the accident, in which he refers to and uses a diagram showing point of collision on these avenues, is as follows:

"Here is the street car track here. I was coming, I'll say, right along here. I was coming along here, and when I got, I guess, along there, I saw his lights. I come here and then here's where I threwed my car in second gear right along very

near that place, come up here. I was still on the track here. Then I met him along about—"

and marked a place on the diagram indicating the point of collision as being about the middle of Winchester avenue, just east of its intersection with Central avenue. He stated that it occurred "just on the other side of the underground, probably fifteen—maybe not quite so far, but ten and fifteen feet from where Central Avenue comes into Winchester Avenue."

Harvey Jones, the witness, stated that he was at the time driving his bus about 20 miles an hour, but that he slowed down his car as he started to go underground, but does not remember whether he blew his horn or not; that he was driving through the underground crossing on his right-hand side of the road, where it left the street car tracks; that he was going about 15 miles an hour when his attention was attracted to plaintiff's car by its lights; and that he then noticed plaintiff's car coming down on his left side of the road, probably 50 feet away. Further describing this collision, he states:

"Why, they come, as I said before on my left—on my righthand side of the road, and then with my car in second gear I started to slow down. I saw him, and at the same time as I was pulling back to the center of the road or to his right—I was about the center, then he came to my left over here something like—then he came on over left. I saw he was going to his right to go on across the crossing, so I went on as if to pass him. Then he made a quick left turn. Of course, I saw he was going onto Central Avenue. Well, when he made that turn, I made a turn to keep him on that left side of the road, and as I did that, he struck the rear fender on the righthand side of my bus."

He further states that he carried no passengers on his bus at this time.

Upon the trial, from this conflicting evidence heard by the jury, it found a verdict for plaintiff for $5,900.

Defendant's motion for a new trial being overruled, it prosecutes this appeal, relying upon four grounds for reversal of the judgment, which are as follows: (1) The court erred in refusing to grant a continuance; (2) the court erred in refusing to give a peremptory

instruction; (3) the court erred in the instructions given to the jury; (4) the court erred in refusing to give instructions offered by appellant.

We will now consider and dispose of these grounds relied upon for reversal of the judgment in the order in which they are made.

The first of these grounds is that the court erred in refusing to grant a continuance upon the call of the case for trial on April 17, 1929.

The record shows that appellee was injured in December, 1928. She filed her suit January 21, 1929, answer was filed February 16, 1929, and an agreed order was entered on March 2, 1929, that the case should be set down for trial on April 17, 1929.

The appellant urges, as appears from its affidavits filed, for continuance herein, that Mr. Keenon was an attorney for the insurance company, who had a policy insuring appellant's bus; that the accident occurred December 27, 1928, and the policy required the bus company to make immediate report of accidents; that this accident was not reported to the affiant Keenon until January 22, 1929, when it was reported that the case had been settled for $75; that thereafter it was reported that suit had been filed, when he went to Ashland to investigate the accident, and was informed that the plaintiff was then in a hospital at Huntington, W. Va., and that medical examination could not then be had because the child was in a plaster cast; that he attempted to locate the manager and president of appellant bus company to find out the name of the driver and make of the bus, in order to determine how the accident occurred and whether the bus was covered by its policy, but that he was unable to see Mr. Ekers, the manager and president of the defendant bus company, and that he employed Waugh & Howerton to assist in the trial; that afterwards Howerton was in active charge of the case and its preparation, and that, when the case was called for trial, Mr. Howerton was under the care of a physician at Martinsville, Ind., for which reason he did not have an opportunity to investigate the accident, find out the witnesses or to have proper examination made of the plaintiff; also that Mr. Waugh, of the firm of Waugh & Howerton employed in the case, states that Mr. Howerton was in charge of the case; and that, after the suit was filed, he made every

effort to get X-rays of the child by competent physicians, for the purpose of determining if her injuries were permanent, but had no opportunity until April 12, five days before the trial, to have an examination made. Also Drs. Gambill and Sparks, in their joint affidavit, state they examined the child on the 13th of April, 1929, and at that time found that she sustained a fracture of the third and fourh vertebræ; that her neck was inclosed in a brace and jury mast, which she had been wearing for some weeks and which had produced muscular stiffness and limitation of motion, for which reason it could not be determined from their examination whether the injury was permanent, because the mast would have a tendency to create a stiffness that would gradually work out after the mast was removed, and then, and only then, could there be ascertained the degree of the permanency of the injury to the child.

In response to this affidavit is that of John T. Diederich, averring that this suit was filed on January 21, 1929, answer filed on February 16, 1929, and thereafter, by agreement of the parties by counsel, a court order was entered setting the case down for trial on Wednesday, April 17, 1929; that the plaintiff, Garnet Kathleen Williams, was not during this time confined to a hospital in the city of Huntington, but only went there for medical and surgical treatment; that it was never impossible at any time for defendant or its counsel to have examination made of the plaintiff; that J. H. Ekers, president of the defendant company, lived in the city of Ashland, where it was easy to locate him at any time; that he was ready and willing for the infant plaintiff to be examined by any reputable physician or surgeon at any time; and, when so requested by the defendant's attorneys, had caused the child to be sent to the Stephenson Hospital in the city of Ashland for an X-ray examination and also to Drs. Gambill and Sparks; that, in order to help said physicians in examination of the child, he caused to be submitted to them the X-ray photographs made by the infant plaintiff's own physicians and X-ray specialists; that the law firm of Waugh & Howerton now have, and have had for some time, a written statement as to what the bus driver, Harvey Jones, would testify to in this case, which statement was secured some time in the month of March. He further states that the only eyewitnesses to said accident known to him are the driver of the bus,

Harvey Jones, Ed Heston, Isabelle Heston, and Garnet Williams; and that no other person saw said accident. Affiant further states that John M. Waugh is the trial lawyer of Waugh & Howerton, and conducts every trial of importance for said firm; that plaintiff had gone to great expense, relying upon the agreement that this case was to be tried on April 17, 1929, for the appearance in court at such time of witnesses from Huntington, W. Va., and other physicians and surgeons of the city of Ashland.

The situation presented to the trial court by these affidavits and counter affidavits, as to whether a continuance should be granted over the objections of plaintiff, upon the grounds therein stated, was one resting in the discretion of the court, to be exercised within the bounds of well-established rules of procedure, based upon considerations of securing fair play and the avoidance of unjust advantage to either of the litigants.

We are of the opinion that the trial court did not abuse its discretion in denying a continuance under the circumstances shown and presented by these offered affidavits.

The case of Cincinnati, N. O. & T. P. R. Co. v. Nolan, 161 Ky. 205, 170 S. W. 650, relied on by appellant in support of its claim that the court erred in not granting it a continuance, to the end that it might secure X-ray pictures of plaintiff's injuries, to be taken by its own physicians, and the affidavits of its physicians, Gambill and Sparks, that the question as to the permanency of plaintiff's injuries could be better determined later when this stiffness of her neck, produced by the wearing of mast, had been outgrown, does not, we conclude, support appellant in its contention.

In the Nolan Case, supra, the facts were that Nolan, an employee of the appellant company, had filed suit against it, claiming that he had sustained permanent injuries through falling from one of its cars, whereby he had broken one of the bones of his hip. He had refused to submit to an examination of his injuries under an anesthetic by the company's physician or to permit them to take X-ray photographs of his injury. The court, upon the motion therefor, had ordered the plaintiff to submit to the taking of such photographs for the determination of the extent of his injuries, if same could be done without danger to him. Plaintiff

continued in his refusal to submit himself for their taking, and, upon the call of the case, the court sustained the defendant company's motion for a continuance, made upon the grounds that it had been unable through the refusal of plaintiff, to secure this necessary information as to the extent of plaintiff's injuries, alleged to be permanent, through the taking of these X-ray photographs, holding that it was unfair to require appellant, under such conditions, to go into trial.

It is apparent that the facts of the cited case are easily distinguishable from the facts here presented, where it is undisputed that the plaintiff has always been ready and willing to submit herself for such examination or for X-ray photographs, as might be desired by appellant, and, in addition thereto, appellee has furnished appellant, or shown it, the X-ray photographs taken by her doctors, showing the extent and nature of her injury. Under such circumstances, it is appellant's own fault if it has not made the physical examinations or taken such X-ray photographs as desired by it, as plaintiff has in no wise sought to prevent it from so doing, but has rather aided appellant, and therefore the cited case relied on, being so different in its facts, cannot be taken to support appellant in its present contention.

We will next consider appellant's complaint that the court erred in refusing to sustain its motion for a peremptory instruction at the close of appellee's testimony, alleging that there is no proof offered by a single witness as to what caused the injury to the child in this case, and that therefore, under the authority of the case of Louisville Railway Co. v. De Marsh, 203 Ky. 321, 262 S. W. 13, 14, holding that the jury could not be "permitted to invade the field of speculation or to base its verdict on surmises not supported by some tangible and substantial testimony," the requested peremptory instruction should have been given, as here, it insists, it would be permitting the "highest guess" to permit this case to go to the jury where it alleges that there was no more evidence as to how the injury occurred than is here presented by the plaintiff.

In support of this position, appellant states that it is nowhere stated by plaintiff or her witnesses that the plaintiff was injured as a result of the collision with its bus.

We do not find this contention supported by the record.

The plaintiff, Garnett Williams, states that she saw the bus coming fast, just before she was hurt and knocked unconscious—clearly this language of this child indicates the occurrence of this collision in which she was injured. The mother, Isabelle Heston, in testifying, speaks of the bus coming at a high rate of speed towards them, as they started in their car across the avenue to enter Central avenue, and states: "Well, when that bus was coming up there, he was coming up so fast that he run into us across—right along here—forced us up here," and then in her next answers stated, "I can't tell you just where it was—up here or not—because I jumped out and ran with the child," but it is to be noted that she states her jumping out and running with the child occurred just after she says that the bus "came and struck us." Also the witness Heston, plaintiff's stepfather, testifies as to this that they had just stopped and listened for the approach of cars, and hearing none, had proceeded slowly across the street, and just passed the street car track, when defendant's bus struck the car in which they were riding. Each of these witnesses spoke of their all having been occupants of the car at the time it crossed the street and was run into. Also Harvey Jones, the defendant's bus driver, who, it is testified, ran into them, describes the rear of his bus as skidding into the plaintiff's car and shoving it across the road, without mentioning, as he clearly would have had it been the case, that Mrs. Heston had with the plaintiff left the car before he struck it. We are therefore of the opinion that this contention is without merit and untenable.

We will next consider the objections urged as to the instructions given and refused by the court.

Appellant first criticizes instructions No. 1 and No. 1A, on the ground that same are not correct statements of the law as given in sections 2739g-35 and 2739g-37, Kentucky Statutes.

The first instruction defines the duties of the driver of the bus and also his duty when approaching a curve which obstructs the view of the highway and that it was his duty in such case to hold the bus under control and give warning, by sounding his horn, of his approach and to keep a lookout for other vehicles; and that, if

the driver of the bus failed to perform either or any of the recited duties, and the plaintiff was injured as a result of such failure, the jury should find for her, and should so find, unless the jury should believe that her injuries were caused solely by the negligence of the driver of the car in which she was riding.

Appellant contends that this instruction does not go far enough, in that it does not cover its theory that plaintiff's injury could have been caused by her mother's negligence in falling while running with her.

It is sufficient to say as to this that there is no evidence whatever of the mother having fallen while running with plaintiff whereby she was injured, or of the child having been injured in anywise by any negligence of the mother, and therefore there existed no evidence upon which to base such an instruction.

Instruction No. 1A also, appellant contends, is not a correct statement of the law as embodied in section 2739g-37, Kentucky Statutes, dealing with the right of way of operators of vehicles at street intersections.

The bus driver, the only eyewitness for appellant, testified that he first saw the Heston car as it was coming through the underground crossing, when he was some 50 feet away; that he was driving on the righthand side of the street; that, as he approached it, he pulled to his left, and the rear of his car skidded and hit the Heston car; and that the Heston car was then only 10 or 15 feet from the mouth of Central avenue, the street intersection.

This rule of construction as to this section of the Statutes was clearly stated by this court in the case of Mann v. Woodward, 217 Ky. 491, 290 S. W. 333, 335, where the court, construing the statute and stating the applicable rule provided by it, said:

"Counsel seem to have misapprehended the effect of this provision. It does not give the operator of a vehicle approaching from the right any greater rights because he happens to be on an inter-county seat highway, or other highway, boulevard, or street of a superior class. All that the statute means is that the operator of a vehicle approaching from the left shall yield the right of way to a vehicle approaching from the right unless the latter is further from the point of intersection, but that

this requirement shall not be observed by the operator of the vehicle approaching from the left if he is on a highway, boulevard, or street of a superior class.''

It may be further added that appellant in the instant case, as in that case said by the court, ''did not attempt to show that as they approached the intersection he was nearer the intersection than appellee. On the contrary, the evidence shows that appellee was driving in a jog, and that appellant, even according to his own evidence, was driving at the rate of about 12 miles an hour, or two or three times as fast as appellee. Thus the physical facts make .it clear that appellant was further from the intersection than appellee.''

This quoted language of the court describes the situation and physical facts presented in this case, as well as in that, and which, we conclude, is in itself sufficient answer to appellant's criticism of instruction No. 1A.

It further follows that for the reasons stated, as shown by the physical facts, the Heston car, being at this intersection when first seen by the bus driver some 50 feet away, whether approaching from the left or right, or whatever his position on this avenue, had the right of way thereover, and therefore, for such additional reason, we are of the opinion that the complained of instruction was proper.

Instruction 3 directed that the jury should find for the plaintiff, unless they should believe from the evidence that her injuries were caused solely by the negligence of the driver of the car in which she was riding at the time of the accident. We find no error in this instruction.

The plaintiff, a child six years of age, held in the lap of her mother at the time of the accident, was not guilty of contributory negligence in any degree, nor could the negligence of the driver, her stepfather, whether guilty of negligence or not, be imputed to her. Louisville & N. R. Co. v. Scott's Adm'r, 184 Ky. 319, 211 S. W. 747.

The next and last objection urged by appellant is that the court erred in refusing to give instructions X, Y, and Z as offered by it.

The requested instruction X seeks to give the "sudden appearance" instruction, which the facts of this case did not warrant, for the reason that by appellant's own witness it is stated that he saw the position of appellee's car, and that it was crossing the avenue ahead of him, when 50 feet away from him, thus affording appellant full opportunity, if he had his car then under control, to have avoided the collision by stopping, if required to do so. Ashland Sanitary Milk Co. v. Messersmith's Adm'r, 236 Ky. 91, 32 S. W. (2d) 727.

The further instruction Y, which the court refused to give, undertook to define the duties of a driver crossing at a street intersection, under circumstances and conditions different from what the evidence shows the facts and conditions in this case were. Here the driver of plaintiff's car was shown to have been driving his car practically straight ahead, into Central avenue, rather than turning at a street intersection, and that he was passing on the right-hand side of Winchester avenue, across such avenue, to the right-hand side of Central avenue, in almost a straight line, and such could have been and was seen by appellant's driver of the bus.

Appellant's final complaint made as to the court's refusal to give its further offered instruction Z, setting out the "sudden peril" doctrine we are of the opinion is also not tenable, as we do not consider that it was here applicable or justifiable, for the reason that, if appellant found himself in sudden peril by reason of the near approach of appellee's car, such condition was due to his own fault, by reason of his negligence and speedy driving of the bus when coming through the underground crossing, with the result that, if a perilous condition was suddenly discovered to exist for appellant, it was one of his own creation, and of which he cannot be heard to complain as constituting an extenuation or excuse for his alleged then negligent driving, induced by and due to dangerous conditions, or a situation of peril, he himself had created by his own fault and negligence.

We have carefully considered and read and reread the full record in this case, and conclude that the trial court has committed no error in the trial prejudicial to the substantial rights of the appellant, and therefore the judgment should be, and is, affirmed.