# Courier-Journal & Louisville Times Co. v. Crossland.

April 20, 1945.

As Modified on Denial of Rehearing

June 22, 1945.

362

.Wheeler & Shelbourne, Roy M. Shelbourne, Peter, Heyburn & Marshall and Gavin H. Cochran for appellant.

A. E. Boyd for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Cas B. Crossland instituted this action to recover $1500 damages for certain personal property destroyed by fire in his law office located in the Masonic Building in Paducah. The petition alleges that the building was burned through the careless use of fire by the agents,

servants and employees of the Courier-Journal and Louisville Times Company (hereinafter referred to as the Company). The trial resulted in a verdict for Crossland for $900 and from the judgment entered thereon the Company appeals.

The grounds assigned for reversal are: 1. The admission of incompetent evidence and the rejection of competent evidence; 2. the instructions were erroneous; 3. a verdict should have been directed in favor of the Company; 4. a continuance should have been granted the Company because of the absence of its key witness; 5. the verdict is excessive.

The Masonic Building, a three story structure with a full basement, was located at the corner of Fifth Street and Kentucky Avenue. Mr. Crossland is a lawyer and his office consisted of two rooms on the second floor in the southwest corner of the building. In it were his library, office furniture and equipment, a suit of clothes and an overcoat, all of which were a complete loss in the fire which destroyed the building about 5:30 o'clock on the morning of February 23, 1941. The basement was divided by a wall and the Company occupied the northern half thereof as an office and distribution room where its papers were sold to carriers for delivery to their customers. John R. McMullen, District Circulation Manager of the Company, was in charge of its office. In the northwest corner of the Company's quarters or office, Mr. McMullen had a small private office partitioned off with beaverboard and the rest of the space occupied by the Company consisted of a large room enclosed by brick walls in which there were a couple of long benches from which the carriers received their papers. This room was floored with brick, except in the rear adjoining the furnace room where it had a hard dirt floor. A twelve-inch uninsulated steam pipe ran along the ceiling from the furnace room (just to the rear) to a radiator in McMullen's office. Separated from the furnace by a brick wall was what some witnesses called a chimney and others referred to it as a ventilator, which was located in the northeast corner of the Company's quarters.

Ten or twelve boys came daily to the Company's quarters about 5 o'clock to receive their morning papers for delivery. Each carrier had a written contract with

the Company whereby he received his papers at whole-sale and delivered them to purchasers or subscribers at a retail price fixed by the Company. Under the contract the carriers were to pay the Company for their papers each Saturday by 9 P. M., regardless of whether or not they collected from their customers. It was the Circulation Manager's duty to see that the carriers got their papers and started on their routes and that the circulation of the paper was maintained. While he had control of the carriers while in the Company's office, he did not direct or supervise them in the manner of delivering their papers or in their relation with customers, such as collections or the extension of credit.

The court admitted testimony that for two months previous to the destruction of the building the carriers burned old newspapers and other waste material in the rear of the Company's quarters in or near the ventilator or chimney to keep themselves warm or to clean up the room. Upon complaints being made to the Manager of this practice by other tenants of the building because of the smoke, he issued instructions that no more such fires should be built. The Company's objection that testimony of previous fires started by the carriers was incompetent as having no connection with the burning of the building on Feb. 23rd, was correctly overruled. The petition alleged that it was the custom of the Company's agents and employees to negligently burn newspapers in the building and regardless of whether or not the carriers were employees or independent contractors, McMullen was admittedly the Company's Circulation Manager and this testimony was admissible to bring knowledge home to him of this dangerous practice. 30 Am. Jur. sec. 304, p. 282; 32 C. J. S., Evidence, sec. 578, p. 433; Illinois Cent. R. Co. v. Hicklin, 131 Ky. 624, 115 S. W. 752, 23 L. R. A., N. S., 870; Chesapeake & O. R. Co. v. Meek, 169 Ky. 775, 185 S. W. 160.

The court correctly refused to let Frank Gholson, Chief of the Fire Department, answer defendant's question if his professional experience did not show that defective electric wiring, flues and burning soot "are not one of the commonest and most frequent causes of fire." There was no evidence of defective electric wiring, flues or the burning of soot to bring this case within the rule stated in 22 C. J. sec. 740, p. 647; 32 C. J. S., Evidence,

sec. 525, p. 224; and Louisville Gas Co. v. Kaufman-Straus & Co., 105 Ky. 131, 48 S. W. 434, that due to knowledge peculiar to his profession the fire chief was competent to express an opinion in this regard.

We cannot agree with the Company that it was entitled to a directed verdict on the ground that no causal connection was shown between the negligent burning of the newspapers and the destruction of the building. It is not necessary for us to determine whether the carriers were employees of the Company or were independent contractors, as it insists. (Should the reader be interested in that question he will find it touched on in National Labor Relations Board v. Hearst Publishing Co., 322 U. S. 111, 64 S. Ct. 851, 88 L. Ed. 1170). It was proven by Tom Russell that when he entered the building about 5 o'clock on the morning it was destroyed he saw a bunch of newspapers burning in the back of the room of the Company's quarters and called the Manager's attention thereto. Several carrier boys, as witnesses for the Company, denied there was such a fire in the room that morning. However, within a few minutes after Russell left the building it was on fire in the basement; hence, it was for the jury to determine whether or not it caught from a fire negligently started in the basement.

We cannot agree with appellant that Chesapeake & O. R. Co. v. Crider, 199 Ky. 60, 250 S. W. 499, 500, rules the instant case on the question that there was no causal connection between the fire started by the carriers and that which destroyed the building. The Crider house was vacant and its front door unlocked at the time it burned; it was east of the railroad tracks and 36 feet from the spot where railroad employees had burned some crossties west of the tracks the "day before appellee's house burned or the second day before." The Crider opinion points out various ways in which the house might have caught fire other than from the crossties which the employees had burned, and that it was next to impossible for it to have caught from that fire and makes it quite plain there was no causal connection between the burning of the ties and the destruction of the house. The facts in the case at bar present quite a different situation as is shown in the preceding paragraph.

The court did not abuse its discretion in refusing a continuance on the ground that the Company's key witness, McMullen, was in the army and could not personally appear as a witness and that the full effect of his testimony could not be had by deposition. This suit was filed February 19, 1942, and McMullen was not inducted into the armed forces until January 30, 1943. Due to McMullen's age the Company reasonably could have anticipated that he would be inducted into the service of his country, yet there is nothing in the record showing it moved for an early trial to obtain the benefit of his personal appearance as a witness. Whether or not a continuance should be granted rests within the sound discretion of the trial judge. Big Sandy Bus Line v. Williams, 246 Ky. 758, 56 S. W. 2d 346; Fidelity & Deposit Co. of Maryland v. Jones, 256 Ky. 181, 75 S. W. 2d 1057. Russell testified in effect that he saw McMullen in the building just a few minutes before the fire, while in his deposition the latter testified he was out in the country delivering papers and he is supported by several witnesses. The judgment must be reversed for excessive damages and the chances are that before another trial can be had the deposition of this witness can be taken on the very point of whether or not Russell had the conversation with him which he detailed.

The court instructed the jury in effect that if they believed the carriers for a reasonable time before the building burned negligently built fires therein with the Manager's knowledge and that as the proximate result thereof the building was burned, then the law is for the plaintiff; but unless they so believed, they should find for the defendant. The Company insists that the court erred in failing to give its proffered instruction that if the fire was not the proximate result of the negligence of the Manager, but resulted from some other cause, even though such cause was to the jury unknown, the law is for the defendant.

It is the duty of the court to submit every defense made by the pleadings and proof. City of Paris v. Carr, 272 Ky. 378, 114 S. W. 2d 474. But here there was neither pleading nor proof to support the instruction offered by the Company and the "unless" provision in the one which was given was all to which the Company was entitled. The complaint that the instruction should have made no reference to the previous fire has heretofore

been answered. Nor do we think that the instructions failed to confine the proof to the pleadings that the fire was caused by the negligence of the servants and employees of the Company in the "use and custom" of burning paper in the basement.

Mr. Crossland's testimony shows he was unfamiliar with the cost of the books in the library, as they had been purchased by his father, and that he knew practically nothing of the second-hand value thereof; therefore, the court erred in letting him testify as to the value of his library. This is especially true in view of the fact that at least half of the library was damaged by the flood in 1937 by being inundated for several weeks and plaintiff was not familiar with the value of damaged books. The owner of property having no knowledge of its value is not a competent witness as to its value. 32 C. J. S., Evidence, sec. 545, p. 318; Sykes v. Wood, 206 Ala. 534, 91 So. 320.

Mr. J. A. McCall, a witness for the Company, qualified as being thoroughly conversant with the value of such law books as composed plaintiff's library. He testified that Mr. Crossland's library was worth $175. This amount when added to the value plaintiff put on the other property destroyed in his office totals around $600; therefore, the verdict for $900 is excessive by one-third. In Kentucky Utilities Co. v. Parrot, 275 Ky. 140, 120 S. W. 2d 1025, the verdict was for $1156.41 for personal property destroyed by fire, while the testimony showed the fair value of the property to be something over $800, and we reversed that judgment as being excessive. Here, the verdict is excessive by about the same per cent as was the verdict in the Parrott case, and we must reverse it on account of excessive damages.

The judgment is reversed for proceedings consistent with this opinion.