## Beasy et al. v. Schneider.

October 17, 1947.

Wm. H. Field, Judge.

C. E. Schindler for appellants.

Davis, Boehl, Viser & Marcus and Joseph E. Stopher for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Philip Schneider, who was engaged in the plumbing business, entered into a contract with Edward Beasy to do certain plumbing work in a building in Louisville which had been leased by Beasy. The work was to be done on a time and material basis. The work was performed during June and July, 1944, and Schneider rendered a bill for labor performed and materials furnished amounting to $1,328.18. A dispute between the parties arose, and on December 30, 1944, Schneider brought this suit to recover $1,328.18, subject to a credit of $500 paid June 20, 1944. The defendants counterclaimed and sought to recover $2,500 damages alleged to have been caused by the negligent and unworkmanlike manner in which the plaintiff made the plumbing installations. Upon the trial of the case the jury returned a verdict in favor of the plaintiff for $763.18, with interest from

July 23, 1944, and, the defendants' motion and grounds for a new trial having been overruled, they have appealed. It is argued that the evidence is insufficient to sustain the verdict, and the instructions are erroneous.

Beasy was engaged in the bakery business, and, when the contract with Schneider was entered into, was preparing to move his equipment from the old location in Louisville to the premises at 1801 West Market Street which he had leased for a term of one year with an option to purchase. Before the expiration of the year he incorporated the business under the name of "Loraine's, Inc.," and exercised his option of purchase. The building at the new location was old, and the installation of considerable new plumbing was necessary to meet the requirements of the bakery business. The chief complaint of Schneider's work is that he connected a 3-compartment sink on the west wall of the building to a dead sewer line which allowed the drainage from the sink to empty under the floor of the building, causing the floor to buckle and decay. Before the plumbing work was done, Beasy had constructed a wood floor over a concrete floor. Extending through the floor was a 2-inch pipe, and Schneider connected the 3-compartment sink to this pipe after testing the pipe to see if it was clear. He said he tested the pipe by pouring several buckets of water into it, and assumed it was clear and connected with a live sewer when the water did not back up in the pipe. Soon after the work was completed persons working on the premises noticed offensive odors, and about a month later water began seeping from under the building onto the sidewalk. Schneider was summoned, and he began checking pipes and sewer lines. An opening through the wood and concrete floor was made, and the ground was excavated to the point where the 2-inch pipe connected with the sewer line. It was found that this sewer line had been disconnected under the building by a former occupant, with the result that water and waste material flowing into the sewer through the connection made by Schneider was absorbed in the ground under the floor of the building. Schneider testified that he disconnected the waste pipe from the dead sewer and connected it with a pipe leading to a city sewer, but on account of the condition of the ground under the building it was not feasible to make a perma-

nent connection at that time. In order to give the appellees immediate relief, he made a temporary connection which he admits did not comply with the requirements of the city building code as to materials used or method employed, but he informed Beasy that the connection was temporary and a permanent connection in compliance with the code would have to be made later. He claimed that he was not permitted to make the permanent connection later.

Much of appellants' brief is directed to the evidence tending to show that the materials used and the method of installing the plumbing were not in accordance with the building code of the City of Louisville, and it is argued that this is conclusive on the question of negligence on the part of appellee. There is evidence, however, that all violations of the code occurred when the second connection was made, and that this was done in an emergency and was necessarily of a temporary nature on account of the existing conditions. There is no evidence of any specific damage caused by the alleged violations. The real issue in the case was whether the appellee was negligent in connecting the waste pipe to a dead sewer in the first instance and whether any damage resulted. There was evidence that it would cost $65 to make a proper and permanent connection with the city sewer, and the jury deducted this amount from the bill of $828.18, the reasonableness of which was not questioned. There was sufficient evidence to sustain the jury's verdict.

The instructions are criticized because the court failed to instruct the jury that it was appellee's duty to use reasonably good and suitable materials and to exercise reasonably skilled workmanship in the installation of the plumbing, and Hartford Mill Company v. Hartford Tobacco Warehouse Company, Ky., 121 S. W. 477, is cited. In the cited case it was held that the jury should have been told that if the defendant constructed the building according to the dimensions stipulated in the contract and of materials of the dimensions set forth therein, that these materials were reasonably sound, and the structure put together in a reasonably skillful and workmanlike manner, the law was for the defendant, and that the converse of this proposition in favor of the plaintiff should have been given. As heretofore point-

ed out, there was no evidence that any damage resulted from the use of defective materials or materials not permitted under the building code. The only possible cause of damage was the connection of the waste pipe to a pipe leading to a dead sewer. Whether this was negligence resulting in damage was submitted to the jury under the instructions given by the court. In Instruction No. 2 the court told the jury that it was the duty of Schneider to exercise ordinary care, which in this case means that degree of care, skill and prudence usually exercised by careful and prudent persons under the same or similar circumstances, and in Instruction No. 3 the jury were told that if they believed from the evidence that Schneider, in carrying out the contract, failed to observe ordinary care and that by such failure the property of defendants was damaged, then they should find for the defendants on their counterclaim. In the instruction on the measure of damages, the court told the jury that if they found for the defendants on their counterclaim they should award them such sum as the jury might believe from the evidence fairly represented the difference between the fair market value of the property before the contract was performed by Schneider and its fair market value after the contract was performed and the property was in its damaged condition, if it was damaged. These instructions properly presented the only issue in the case. The appellants did not offer any instructions. Even if it be assumed that the instructions were not complete, yet they were good as far as they went and it was not the duty of the court to instruct on any point not requested by the litigants. Ramsey v. Sharpley, 294 Ky. 286, 171 S. W. 2d 427; Jones v. Sanders, 284 Ky. 571, 145 S. W. 2d 514.

Judgment is affirmed.