238 S.W.2d 476 (1951)
KENTUCKY-WEST VIRGINIA GAS CO.
v.
SLONE et al.
Court of Appeals of Kentucky.
March 9, 1951.
Rehearing Denied April 27, 1951.
*477 Combs & Combs, Prestonsburg, John L. Smith, Catlettsburg, for appellant.
Clark Pratt, John Chris Cornett, and Cordell H. Martin, all of Hindman, for appellees.
SIMS, Justice.
Rush and Lark Slone, joined by their wives, sued the Kentucky-West Virginia Gas Company for $2500 damages done by fire to timber and fencing on a tract of 300 acres of land in Knott County owned by them. The petition averred the fire was started by negligence of the company. The answer was a general denial followed by a plea of contributory negligence on the part of plaintiffs. A trial resulted in a verdict for plaintiffs in the sum of $500. In seeking to reverse the judgment thereon the company urges: 1. A verdict should have been directed in its behalf; 2. the instructions are erroneous; 3. incompetent evidence was admitted.
A brief resume of the evidence is necessary in order to pass on the first question. The company had leased from plaintiffs the *478 oil and gas under the land and had drilled and were operating two gas wells thereon. One of these wells made a small amount of oil which had to be removed twice a week to prevent interference with the gas production. This particular well was located near a branch across from which some 60 or 80 feet was a cliff 12 feet in height. The company constructed a two inch pipe line from the well to within about 10 feet of the cliff. It would blow the oil from the well through this pipe against the cliff and the oil would run back into a 3 foot square pit. This cliff was at the edge of the woods and the end of the "blow off pipe" was about one foot above the ground and was over the pit and oil blown through this pipe would spray the surrounding ground, leaves and trees. Usually, some 15 gallons of oil were blown into the pit twice a week where it was ignited by an employee of the company and left burning. Ordinarily, it would take from 2 to 3 hours for the oil to be consumed by the fire.
Prior to the fire in question a valve of the "blow off pipe" had become defective and gas leaked through this pipe continuously. That fact had been reported to the company at least a couple of times by its well operator but had not been corrected. Plaintiffs obtained free gas from this well for domestic purposes but they made and maintain their own connection with the well. To control their flow of gas plaintiffs maintained regulators at the ground level near the well, and these regulators also leaked gas at the time of the fire.
On Wednesday, April 2, 1947, Willie Gayheart, the company's well operator, blew approximately 15 gallons of oil into the pit, cleaned the leaves and other inflammable material from a 20 foot square area surrounding the pit and lit the oil. He remained for 20 or 25 minutes and when he left the fire was 10 or 12 feet high but there were no leaves or other inflammable material near the pit.
The gas escaping from the end of the "blow off pipe" due to the leaky valve would ignite from the burning oil and would burn in a flame 8 to 12 inches high from the mouth of the pipe which was one foot above the ground. When this gas became ignited at the end of the "blow off pipe" it would continue to burn until the gas pressure became too low to sustain the flame, or until the wind blew it out. It was often burning when the well operator returned in two or three days to again blow off the oil and sometimes the well operator would return and find it out. The evidence shows the company permitted this flame to burn continuously at the end of the "blow off pipe" and that leaves accumulated around the end of the "blow off pipe" to such an extent that it was necessary to remove them twice a week before burning the oil blown into the pit. The company had notice of this flame burning at the end of the "blow off pipe" and had been requested to stop it.
On Sunday, April 6, 1947, a dry and windy day, Lark Slone and his son-in-law, Mason Moore, saw smoke in the hills. They could not locate the fire immediately. First they thought it was the house, then the barn, and it was some 15 or 20 minutes after they first saw the smoke until they arrived at the well. When they got to it they found fire was surrounding the "blow off pipe" in a circle of about 200 feet in diameter. Included in this fire area were the regulators of plaintiffs which were on the ground and known to leak gas.
The company insists it was entitled to a directed verdict because no witness could testify as to how and where this fire started. It argues that it had been three days since the oil was burned in the pit and no one could say definitely that the burning oil ignited the gas at the end of the "blow off pipe"; or if it did, this gas continued to burn three days, and then started the conflagration of which plaintiffs complain. It is the contention of the company that the rights of litigants cannot be determined by guess, surmise or speculation and that plaintiffs' evidence fails to show with any degree of certainty this fire was started by the company's negligence, citing such cases as Chesapeake & O. R. Co. v. Crider, 199 Ky. 60, 250 S.W. 499; Spencer's Adm'r v. Number Four Superior Coal Co., 228 Ky. 799, 16 S.W.2d 168; Elcomb Coal *479 Co. v. Gray's Adm'x, 273 Ky. 230, 115 S.W. 2d 1056. These authorities support the company's contention that the jury will not be allowed to speculate as to whether the company's negligence started the fire and that fact must be proven.
However, the facts and circumstances surrounding this fire show with reasonable degree of certainty the gas in the "blow off pipe" was ignited by the company's negligence and this gas flame was responsible for the fire which got out in plaintiffs' woods.
When plaintiffs proved the company burned this oil in a pit under the mouth of the "blow off pipe" through which it knew gas was escaping and its well operator left the fire before the oil was consumed, with utter disregards as to whether the gas from the mouth of the "blow off pipe" was burning, this established negligence upon the part of the company. But it argues there was no testimony showing the gas at the mouth of the "blow off pipe" did ignite on April 2nd and burned until April 6th, or that this gas flame started the fire on April 6th which burned plaintiffs' timber and fencing. True, no witness testified the gas at the mouth of the "blow off pipe" on this occasion ignited from the burning oil, but the circumstances show it did. We say this because the escaping gas was of sufficient volume to make a flame from 8 to 12 inches high and two inches in diameter. It is common knowledge that such a volume of escaping gas will ignite from a burning pit of oil just under it where the oil fire continued for two or three hours and was of such intensity as to make a blaze 10 to 12 feet high from a 3 foot square pit.
The company's evidence shows when this gas was ignited it would burn until the gas pressure fell or until the wind blew it out, and it often burned until the well operator returned three days later. But it produced no proof that the gas pressure fell or the wind extinguished this flame on this occasion. We think the circumstancial evidence shows with reasonable certainty this gas was ignited on April 2nd, and burned until April 6th, on which day the woods were set fire.
The company next argues there is no evidence to show this gas flame started the fire which burned over plaintiffs' land. Again the circumstances show it did. The proof is to the effect that when the oil was blown out of the pipe it sprayed the nearby ground, trees, leaves and brush; that before starting the oil fire the well operator raked away twigs, leaves and all other such inflammable material from a 20 foot square area around the pit wherein the oil was burned. The mouth of the "blow off pipe" was a foot from the ground and from it was burning the gas flame 2 inches in diameter and from 8 to 12 inches high. The day of the fire, April 6th, was dry and windy.
All the circumstances are strong evidence that the conflagration which burned plaintiffs' timber and fencing started at the mouth of the "blow off pipe". When plaintiffs produced evidence which showed this oil fire started this gas flame, the burden then shifted to the company to establish the conflagration was not caused by its negligence. Bryant v. Ellis, 222 Ky. 272, 300 S.W. 610. This it failed to do.
The company was negligent in two respects; first in failing to maintain a watch over the fire until it burned out, and second, in failing to maintain the "blow off pipe" free of leaks. These facts were proved by the testimony of the company's agent, an eye witness. By circumstantial evidence, plaintiffs proved that the fire which caused the damage started at and spread from the mouth of the "blow off pipe" negligently maintained. These proven circumstances were sufficient to support the only inference necessary to be drawn; to-wit, the ultimate fact that the negligence of the company caused the destruction of plaintiffs' property.
Cobb v. Twitchell, 91 Fla. 539, 108 So. 186, 45 A.L.R. 865, is not unlike the instant case in principle. There, a road crew burned off a right-of-way and took great precaution to protect surrounding property by establishing fire guards 8 to 12 feet in width. The fire was said to be completely extinguished at 11 o'clock in the morning but two members of the crew remained *480 to watch the territory burned over to make sure the fire was out. At 1:15 that afternoon fire broke out in a clump of grass "in a flash, as though something like an explosion" in an area beyond the fire guard, and was soon out of control and damaged plaintiff's citrus grove. In upholding plaintiff's recovery of damages the court said:
"Its (fire's) treacherous propensities are within the common knowledge of all prudent persons, and one setting out a fire must use care to prevent it from damaging his neighbor in proportion to the risk reasonably and ordinarily to be anticipated by a prudent person under the circumstances. * * *
"Negligence may be inferred from circumstances properly adduced in evidence, provided those circumstances raise a fair presumption of negligence; and circumstantial evidence alone may authorize the finding of negligence." 91 Fla. 539, 108 So. 186, page 187, 45 A.L.R. 865, pages 867 and 868.
It is our conclusion that the circumstantial evidence here is sufficient to take the case to the jury and to sustain the verdict.
But the judgment must be reversed on account of an erroneous instruction. The record shows the company objected to the first instruction offered by plaintiffs and excepted when the court overruled its objection. Its criticism of the first instruction is well-taken. That instruction, after setting out the duty of the company to use ordinary care in burning waste oil to prevent it from spreading to the lands of plaintiffs, allowed a recovery "if the jury believe from the evidence * * * the company failed to use ordinary care", without requiring the jury to believe from the evidence that as a direct and proximate result of such negligence the fire spread to plaintiffs' land. Before a recovery can be had, the jury must find the negligence was the direct and proximate cause of the injury and damage. Interstate Coal Co. v. Love, 153 Ky. 323, 155 S.W. 746; Ware v. Saufley, 194 Ky. 53, 237 S.W. 1060, 24 A.L.R. 500; Beasy v. Schneider, 305 Ky. 586, 205 S.W.2d 162. The company's second criticism of this instruction, that the latter part of it assumed the company started the fire, is also well-taken. Although the circumstantial evidence was overwhelming that the gas was ignited from the oil the company burned in the pit, this was a question for the jury's determination, and this instruction erroneously assumed this gas was so ignited.
Complaint is made of the second instruction on the measure of damages. In it the court correctly told the jury the measure of damages on the fencing destroyed was the fair and reasonable value thereof. The company insists the evidence shows some of the fencing was not destroyed but only damaged, hence the measure of damages with reference to it is the fair and reasonable sum which will restore the damaged fencing to the condition it was in before the fire, citing McGuire v. Lovelace, Ky., 128 S.W. 309; Kentucky-W. Va. Gas. Co. v. Crum, 258 Ky. 508, 80 So. 186, page 187, 45 A.L.R. 865, pages S.W.2d 537. These authorities support the company's position and on another trial the court should follow them when instructing on the measure of damages to the fencing which was damaged but not destroyed.
The company complains the testimony of W. M. Hall as to the amount of damages done the timber by the fire was not competent. This witness qualified as an experienced timberman and his testimony was that the fair market value of the timber actually destroyed by the fire was $500. This was competent. Louisville & N. R. Co. v. Beeler, 126 Ky. 328, 103 S.W. 300, 11 L.R.A.,N.S., 930; City of Marion v. Nunn, 292 Ky. 251, 116 S.W.2d 298. He attempted to testify as to the value of the timber that was damaged but not destroyed, but his testimony was so indefinite and uncertain on this point that the court admonished the jury not to consider it.
Further complaint is made by the company that over its objection plaintiffs were allowed to prove on other occasions its well operator negligently permitted this gas flame to remain burning. The question was whether the well operator was *481 negligent on this occasion and evidence of his negligent practices or customs on other occasions was not admissible. Cincinnati, N. O. & T. P. Ry. Co. v. Hare's Adm'x, 297 Ky. 5, 178 S.W. 835, page 838, and authorities therein cited.
Likewise, the court erred in permitting plaintiffs to prove over its objections that the valve through which gas leaked into the "blow off pipe" was repaired about a month after the fire. It is never admissible in proving negligence to show repairs after the accident. Kentucky & W. Va. Power Co. v. Stacy, 291 Ky. 325, 164 S.W. 537, 170 A.L.R. 1. However, this was not prejudicial in this instance since the company admitted the valve in this pipe was leaking gas at the time of the fire.
But the testimony of Rush Slone, that the well operator said he reported this leaking valve to the company twice and the company had done nothing about it, was competent. This was not a declaration by the agent which would not be binding on his principal,, 29 Am.Jur., "Evidence", § 676, p. 570; Youngblood Truck Lines v. Hatfield, 304 Ky. 600, 201 S.W.2d 567, page 572, but was a statement of fact as to what the employee did in the line of his duty as well as to what the company did or did not do in acting on his report.
The judgment is reversed for proceedings in conformity with this opinion.