## COLWELL v. STACY'S ADM'R.

Court of Appeals of Kentucky.

Feb. 12, 1954.

Baird & Hays, Pikeville, Willis W. Reeves, Hazard, for appellant.

William Melton, Tolbert Combs, Don A. Ward, Hazard, for appellee.

STEWART, Justice.

This appeal is from a judgment of the Perry Circuit Court awarding plaintiff below and appellee here, Riley Stacy, as administrator, $5,000 for the death of appellee's son, Hunter Stacy. The petition averred Stacy's death was caused by Colwell's negligence. The answer was a general denial and a plea of contributory negligence. Colwell's motion for a directed verdict having been overruled at the conclusion of all the evidence, the case was submitted to the jury which found in appellee's favor and assessed damages in the amount above mentioned.

Appellant first urges as a reason for reversal that the court erred in overruling his motion for a directed verdict since, as he contends, appellee failed to adduce any evidence of negligence on his part in the first instance and, further, it was conclusively shown that the decedent was guilty of contributory negligence as a matter of law.

The accident occurred in Perry County on Highway No. 80 between Hazard and Combs at a place several hundred yards east of Combs. On January 17, 1952, at about 10:00 p. m., the deceased, a coal miner twenty-three years of age, was walking toward Combs. The actual point of impact is located on a straight, level stretch of the highway and, at the time of the mishap, appellant, accompanied by three teen-age girls, was driving his new Packard automobile toward Combs. The body of the deceased, who was killed instantly, was found on the south edge of the westbound lane after he was struck.

No eyewitness to the accident was introduced in behalf of appellee. Milford Tate, a coal-truck driver, testifying for appellee, stated that as he drove his truck along this stretch of road on his way to Hazard, at a rate of speed of 40 to 50 miles per hour, he noticed a man in miner's clothing, presumably the deceased, walking in the direction of Combs along the side of the road on his right and with his face to the traffic. Shortly thereafter he passed a car with its lights dimmed which he identified as a Packard. He estimated it was traveling at a rate of speed of 45 to 50 miles per hour. According to him he had gone some 500 to 700 feet past the man he saw walking on the shoulder of the road when he met the Packard. He later observed this car in his rear-view mirror and figured it was probably 200 feet behind him when he saw its brake lights come on. He continued on and did not know of the accident until the following day. It is appellee's contention that the deceased was struck within a matter of seconds after the truck passed the car.

Appellee, learning of his son's death the following day, stated he went to the undertaker's office and examined the body. He found that the deceased's right leg had a compound fracture, which caused the bones to protrude forward. The left leg also had a bulge in front. There was also a bruise on the back of the right shoulder of the deceased. Appellee testified appellant later told him he did not see the deceased until he was only two feet from the front bumper. He examined appellant's car and found

that the grill on the hood had been damaged on the driver's side.

According to appellant's testimony, a drizzling rain was falling at the time of the accident. As he entered the straight stretch of highway a truck approached. He and the truck driver dimmed their lights and as the vehicles drew near each other he said the truck crowded him over somewhat toward the right edge of the pavement. About the time he had gotten four or five feet beyond the back of the truck, his lights still dimmed, he heard Maurine Whitaker, one of the girls in the car with him, scream, "There's a man." He then saw the deceased standing in a half-bent position some two or three feet inside his lane of traffic facing the automobile. As he applied his brakes, the deceased was struck by the left front part of his car and hurled to his, appellant's, left side of the road. He brought his vehicle to a stop within twenty feet of the point of impact, he claims. His passengers became hysterical, he asserts, so he took them to the house of a friend near by and then notified the state police. He returned and parked with his lights on the body of the deceased. Maurine Whitaker, who was sitting in the front seat of appellant's car and who first saw the deceased, substantiated appellant's account of the accident. She was the only one of the three teen-age girls in the car who testified.

Evidence was introduced to the effect that the deceased was under the influence of intoxicants around 8:00 p. m. on the day of his death. Two state troopers, who went to investigate the accident soon after its occurrence, testified "he (the deceased) smelled as if he had been drinking."

It is appellee's argument that the deceased was struck from the rear by appellant's car while he was off the highway walking along the south shoulder of it. This contention is based upon a twofold theory which we think is wholly untenable. The first is that the body after the accident was found lying off the pavement on the south shoulder of the highway and thus, appellee reasons, the point of impact was at or near where the deceased was found. The second is that because the broken bones in his legs protruded forward this would indicate the deceased was struck low from behind on his legs by the bumper of the car. Appellee maintains the nature of the injuries received by the deceased refutes appellant's statement that he was on the road facing the car at the moment he was hit.

In the face of appellee's speculation as to how and where the accident occurred we have the uncontradicted evidence of appellant and Maurine Whitaker that the deceased was over in appellant's lane of traffic when he was struck. The evidence also shows at the time he was hit his head was thrown back on the hood with such force that he broke the radio aerial as he rolled off the left side of the car. He was then thrown across the highway and off the pavement. We deem it unnecessary to attempt an explanation as to why the deceased received the type of injuries his father described in his testimony. It is sufficient to say that all the positive, direct proof indicates appellant was within his right of way on the highway when the deceased was fatally hurt. In contrast to this we have only what amounts to a surmise that the deceased was struck while he was walking along the south shoulder of the highway.

In a case such as this there must be some evidence to show that the deceased lost his life through the negligence of the operator of the automobile and this evidence must be sufficient to charge the operator with a breach of duty. There must be facts that will authorize a finding by a court or a jury without indulgence in mere speculation. See Chesapeake & O. Ry. Co. v. Crider, 199 Ky. 60, 250 S.W. 499. All the direct proof is one way that appellant was on his side of the highway traveling with his car under control at a lawful rate of speed when the deceased suddenly appeared in his path and so near him that he could not avoid the accident. We are of the opinion there is no evidence of negligence on the part of appellant in this case which proximately caused the deceased's death.

Certain other errors are assigned for reversal, but the conclusion we have reached makes it unnecessary for us to consider them.

Wherefore, the judgment is reversed and remanded for proceedings not inconsistent with this opinion.