Ruby BROWN, Administratrix of the Estate of Marvin Ray Brown, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 3575.

United States District Court
W. D. Kentucky,
Louisville Division.

Feb. 3, 1959.

136

Wallace H. Spalding, Jr., Louisville, Ky., for plaintiff.

J. Leonard Walker, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This suit was filed March 28, 1958, by the plaintiff, Ruby Brown, as administratrix of the estate of Marvin Ray Brown, a resident of Louisville, Kentucky, who died January 21, 1958, against the United States of America under the provisions of the Federal Tort Claim Act, Title 28, Section 1346(b) United States Code.

Plaintiff seeks to recover $50,000 as damages to the estate of decedent on account of the alleged negligence of Frebert N. George, a postal employee, while operating a 3-ton truck, owned by the United States Post Office Department, which struck and killed decedent at the intersection of Broadway and Third Street in Louisville, Kentucky, in the early hours (approximately 5:30 A.M.) of January 21, 1958.

The answer denied all allegations of negligence on the part of George, and affirmatively alleged that decedent's death was primarily caused by his own negligence.

The case was tried to the Court without a jury on December 18, 1958.

Findings of Fact

From the stipulation, exhibits, and testimony at the trial, the Court makes the following findings of fact:

(1) Broadway runs east and west and is intersected at right angles by Third Street, running north and south. Traffic on the north side of the center of Broadway is from east to west, and south of the center-line is from west to east. From curb to curb, the street is 70 feet wide; there are six traffic lanes marked with white dividing lines, three on either side of the center-line. The traffic lanes next to the curb on each side are 17 feet wide, the middle driving lane on each side of the center-line is 9 feet and 10 inches, and the two lanes adjoining the center-line are each 8 feet and 2 inches wide. For convenience, the parties have numbered the traffic lanes of Broadway, beginning at the north side with No. 1 and extending to the south side with No. 6, so that crossing Broadway from north to south lanes Nos. 1, 2, and 3 are north of the center-line and lanes Nos. 4, 5, and 6 are south of the center-line. A crosswalk is marked on each side of Broadway across the intersection, each being 8 feet and 6 inches wide.

(2) Third Street is 42 feet wide between the curbs and is divided into four traffic lanes, two on each side of the center-line; the outside lanes are each 11 feet wide and the center lanes 9 feet and 10 inches wide. The crosswalks marked from the north and south lines of Broadway, one toward the north and the other toward the south, are each 23 feet and 6 inches in width.

(3) There are two traffic signals suspended over the intersection, one near the southwest corner and the other near the northeast corner. Each of the four corners of the intersection have traffic signals for pedestrians, flashing appropriate signals designating when pedestrians should walk and when they should wait in crossing at the intersection.

(4) The decedent, Marvin Ray Brown, was 25 years of age, a newsboy, able-bodied, and apparently in good health. When he was struck by the mail truck, he was in the crosswalk on the east side of Broadway and approximately in the center of traffic lane No. 5, that is, the middle traffic lane on the south side of the center-line at the intersection.

(5) Frebert N. George, an employee of the United States Post Office Department, on the occasion of this accident was engaged in his regular duties, operating a heavy-duty, 2-axle, 3-ton truck, and was traveling eastwardly on Broadway in lane No. 5, or the center lane, on the south side of the center-line; according to his testimony, he was traveling at a speed estimated to be 20 to 30 miles per hour. His truck was in good mechanical condition; it was equipped with proper lights, which were turned on, and with brakes in good mechanical and working condition.

George testified that, as he approached the intersection of Third and Broadway, the traffic lights were green for traffic going eastwardly on Broadway; that as he entered the intersection he passed a vehicle proceeding west on Broadway in traffic lane No. 3; that, after passing the westbound vehicle approximately in the center of the intersection, he saw "a white blob", which turned out to be the decedent who was carrying newspapers in his hands, and that when he saw the decedent he immediately "went for his brakes" but was unable to slacken the speed of his truck or change its course until after decedent had been struck. George testified that the front of his truck was in the center of the intersection when he first discovered decedent and that he was prevented from seeing him by the passing of the vehicle travel-ing west on Broadway, which he passed in the intersection; he estimated the distance between the point where he first discovered the pedestrian to the actual point of impact was from 21 to 29 feet. After striking decedent, George's truck continued a distance of approximately 40 feet.

(6) James B. Tucker, an employee of Phillip Morris Tobacco Company, was in an automobile in the southernmost lane of Broadway and had stopped at the intersection with Third Street in obedience to a red light, intending to turn right or southwardly onto Third Street. Tucker testified that he saw the mail truck pass through the intersection at Third Street, but he could not say whether the red light for which he had stopped had turned green when the truck passed through. He did know that Marvin Brown, the decedent, was in the crosswalk when he was struck; he saw the truck's driver apply its brakes and saw the newspapers carried by Brown fly into the air, though he did not see Brown until immediately before he was struck.

(7) Bill Miller was operating a taxicab and driving south on Third Street at the time of the accident; he was stopped at its intersection with Broadway by a red light and while the light was red he was making notes or memoranda in his report; when the light changed to green for traffic on Third Street crossing Broadway, he saw newspapers flying in the air.

(8) Another taxicab was approaching the intersection at the time of the accident, traveling westwardly on Broadway in traffic lane No. 2, and was driven by the witness Lauersdorf. This witness testified that as the mail truck approached the intersection the light was green for traffic on Broadway, and that he saw the mail truck cross the intersection and strike the decedent. He further testified that decedent started across the intersection at the northwest corner and, in a "dog trot", went diagonally across Broadway beyond the center-line and to a point in the east crosswalk about the center of traffic lane No. 5, where dece-

dent was struck while proceeding across the intersection against a red light.

(9) Police Officers Bynum and Jones testified it was their estimate that they arrived at the scene of the accident from three to five minutes after receiving the call reporting the accident. They each testified that it was raining, that the intersection was well-lighted, and that the decedent's body was lying east of the east crosswalk approximately eight and one-half feet from the south curb of Broadway.

This is substantially the evidence in the case, from which it appears to the Court to be an inevitable conclusion that the decedent, Marvin Ray Brown, came to his death by his own negligence. Frebert N. George was driving at a reasonable rate of speed, maintaining a lookout, and the preponderance of the evidence is that he was obeying traffic signals. There was nothing George could do, with the means at hand after he discovered Brown in the intersection, to avoid the collision.

Conclusions of Law

The Court makes the following conclusions of law:

(1) The Court has jurisdiction of the subject matter and of the parties. Title 28, Section 1346(b), United States Code.

(2) The Federal Tort Claim Act conferred upon the estate of the decedent Brown a claim for money damages on account of his death caused by the negligence or wrongful act or omission of Frebert N. George, an employee of the United States Post Office Department, provided that the United States, if a private person, would be liable to the estate of the decedent under the law of Kentucky.

As stated by the Kentucky Court of Appeals, in Saddler v. Parham, 249 S.W. 2d 945, 947, decided in 1952, in setting forth the basic rules designed to control the liability for damages in negligence cases: First, there must exist, as a basis for liability, primary negligence on the part of the defendant constituting a proximate cause of the injury and, second, notwithstanding this basis, the plaintiff will be barred of recovery if he also was negligent and his negligence was a contributing factor in causing the injury. The court further stated that the contributory negligence of a plaintiff may be neutralized and he be permitted to recover, where the defendant, after the plaintiff's peril becomes obvious, fails to avail himself of a last clear chance to avoid the accident. The court then said, "However, in recent cases, the Court has placed limitations upon the application of the last clear chance doctrine, recognizing that some such limitations are necessary if the defense of contributory negligence is to have any meaning."

In the Saddler case, supra, the Kentucky court said that its former opinion in Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758, was wrong on the point of the last clear chance doctrine. It then adhered to the rule supported by the great weight of authority "that it is only where the plaintiff is *physically unable* to escape from his peril that the defendant is held responsible on the ground that he *should have* discovered the peril."

The last clear chance doctrine contemplates a plaintiff in a position of peril by his own negligence and that the plaintiff's perilous position was or should have been discovered by the defendant in time, and with the means at hand, to avoid injury to the plaintiff.

Measured by this rule, the Court concludes that the decedent Brown, by his own negligence, so contributed to his injuries and resulting death that but for his negligence the accident would not have occurred. It is further concluded that the position of peril and danger in which Brown's negligence placed him was not and could not have been discovered by George in time to have avoided the collision. Hence, the defendant has no liability and a judgment is authorized dismissing the plaintiff's complaint. The defendant's counsel will tender judgment, on notice to plaintiff's counsel, in accordance with Rule 7 of the local rules of this Court.